**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Norman LUE, Defendant-Appellant.**

**No. 73-1980.**

United States Court of Appeals,
Ninth Circuit.

June 19, 1974.

Spencer W. Strellis (argued), Stanley P. Golde, Golde, Strellis & Hall, Oakland, Cal., for defendant-appellant.

Frederick Read (argued), Crim. Div., Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and WALLACE, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

A jury convicted Lue of one count of conspiring to import heroin in violation of 21 U.S.C. § 952 and three counts of distributing heroin and possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

He appeals asserting two errors: (1) that he was a victim of entrapment as a matter of law and (2) that the conduct of the law enforcement officers was so outrageous that his conviction constituted a denial of due process. We reject both of these contentions and affirm the judgment.

On March 5, 1972, Young Ah Jen (Young) approached Henry Monsen in Hong Kong and proposed that Monsen participate with him in smuggling morphine into the United States. After advising Young that he would "think about it," Monsen contacted the agent in charge of the Bureau of Narcotics and Dangerous Drugs in Hong Kong (Shostrom) and told him of the proposal. Monsen was instructed to keep in contact with Young; later, Monsen agreed to participate with Young in the smuggling. After May 10, when Mosen came to San Francisco Shostrom became the contact with Young in Hong Kong.

On June 5, Young asked and Shostrom agreed to take a package to Monsen in San Francisco. On June 16, Young called Shostrom and asked him to have Monsen call Lue in Los Angeles. Young had previously met Lue in Hong Kong and had offered to send heroin to Lue in the United States. Young gave Shostrom Lue's telephone number and said that Monsen should give the code phrase "Young has just come from the airport" when he spoke with Lue.

Monsen contacted Lue and repeated the phrase as directed, but Lue gave no indication he recognized the code. Monsen subsequently met with Lue in Los Angeles, at Monsen's request, and told him to "contact his party in Hong Kong." Later, on June 22, Lue contacted Monsen in San Francisco and informed him that he had talked to Young and asked Monsen "how much was coming."

After the drugs arrived in San Francisco, Monsen met Lue, delivered a bag containing the heroin and received from him $2,000. Lue was followed by federal agents and was later arrested.

## I.  ENTRAPMENT

Lue maintains that he was the victim of entrapment as a matter of law. He claims he was unwilling to participate in narcotics smuggling but was overcome by the repeated importunings of the government agents. He also objects that the trial court instructed the jury

---

* Honorable William G. East, United States District Judge, District of Oregon, sitting by designation.

in accordance with the traditional concept of entrapment which focuses on the accused's predisposition to commit the offense. He contends that the jury instructions should have focused on the degree of governmental activity.

In United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the Court reaffirmed its earlier opinions in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), which held that the defendant's predisposition to commit the crime was the principal element in the defense of entrapment. In *Russell*, the Court expressly overruled the conclusion reached by us that as a matter of law "a defense to a criminal charge may be founded upon an intolerable degree of governmental participation in the criminal enterprise." United States v. Russell, 459 F.2d 671, 673 (9th Cir. 1972), rev'd, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The jury instructions[1] given by the trial court were directed to the concept of predisposition and are therefore proper under the holdings of *Sorrells, Sherman* and *Russell*. The trial court committed no error by denying Lue's motions to instruct the jury in accordance with our erroneous holding in *Russell*.

■ We agree with Lue that this case differs from *Russell* in the degree of predisposition, but that does not call for a different result as a matter of law. In *Russell* the evidence clearly disclosed that, prior to the time of the government involvement, the defendant had actually been engaged in the criminal activity for which he was convicted. Russell even conceded in the court of appeals "that he may have harbored a predisposition to commit the charged offenses . . . ." 459 F.2d at 672. Lue, on the other hand, has persisted in contending that he had no such predisposition nor prior criminal activity. The jury, after hearing all the evidence and after proper instructions, was apparently persuaded that "the Government's deception [did not] actually implant . . . the criminal design in the mind of the defendant . . . ." *Russell*, 411 U.S. at 436, 93 S.Ct. at 1645. The evidence was clearly sufficient for the jury to reach that conclusion.

## II. DUE PROCESS

■ Lue asserts that his conviction was obtained in violation of due process because of the conduct of the law enforcement officers. His contention is apparently based upon the following language from *Russell*:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. Rochin v. California, 342 U.S. 165[, 72 S.Ct. 205, 96 L.Ed. 183] (1952), the instant case is distinctly not of that breed.

---

1. The district court instructed in part:

The defendant asserts that he was a victim of entrapment as to the crimes charged in the indictment.

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law-enforcement officers or their agents to commit a crime, he is a victim of entrapment and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment.

. . .

If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as charged in the indictment, whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

411 U.S. at 431–32, 93 S.Ct. at 1643. This dictum has already produced some speculation, Comment, The Viability of the Entrapment Defense in the Constitutional Context, 59 Iowa L.Rev. 655, 664–69 (1974), and litigation, United States v. Archer, 486 F.2d 670 (2d Cir. 1973), but no resolution.[2] The *Russell* dictum implies that where the entrapment defense is unavailable to the defendant because of his predisposition, a remedy founded on due process may still be available in an extreme case.[3] Thus, the Court did close the door on the government activity theory in an entrapment case, but it left it open enough to provide proper relief when such activity violates due process. This is not an exception to entrapment law which focuses on a defendant's predisposition. It is a recognition that some government activity might be so grossly shocking to be violative of due process regardless of whether the requirements of entrapment have been met. For an accused to benefit from this remedy, the facts of this case would have to demonstrate government conduct "so outrageous" as to be analogous to the police conduct in *Rochin*.

Lue, however, attempts to thrust open completely that which was left slightly ajar by claiming the same type of government activity validated in *Russell* is now tainted under the banner of due process. In this he fails. Monsen and Shostrom were conduits in the transfer of the heroin from Young to Lue. As in *Russell*, where the government agents provided something of value in order to infiltrate the drug ring, here also the government provided something of value when it furnished the needed couriers to carry the heroin. The Court stressed in *Russell* that the defendants could have obtained the chemical ingredient supplied by the government from alternate sources and thereby achieved their criminal purpose without the assistance of the government. Similarly, if Monsen and Shostrom had not been available, someone else would have been employed by Young to carry the heroin to Lue.

In *Russell*, the Court, addressing itself to government activity similar to that involved in this case, stated:

> [I]n drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation; if that be so, then the supply of some item of value that the drug ring requires must, as a general rule, also be permissible. For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them. Law enforcement tactics such as this can hardly be said to violate "fundamental fairness" or "shocking to the universal sense of justice," *Kinsella*, [361 U.S. at 246, 80 S.Ct. 297, 4 L.Ed.2d 268].

411 U.S. at 432, 93 S.Ct. at 1643.

Just as the Supreme Court concluded in *Russell*, we also conclude in this case:

> The law enforcement conduct here stops far short of violating that "fundamental fairness, shocking to the universal sense of justice," mandated

2. In *Archer* the defendants asserted the due process defense based on the *Russell* dictum but the Second Circuit avoided the resolution of the "uncertainties and dimensions of this defense," Comment, The Viability of the Entrapment Defense in the Constitutional Context, 59 Iowa L.Rev. 655, 665 (1974), and decided the case on other grounds. United States v. Archer, 486 F.2d 670, 677 (2d Cir. 1973).

2. In *Archer* the defendants asserted the due the Court has apparently tried to augment

it with a separate non-entrapment defense based on due process. This defense is centered on the theory that although the predisposition of a defendant will render the traditional entrapment defense unavailable to him, the fundamental fairness requirements of due process may prevent his prosecution.

Comment, The Viability of the Entrapment Defense in the Constitutional Context, 59 Iowa L.Rev. 655, 665 (1974).

by the Due Process Clause of the Fifth Amendment. Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 246[, 80 S.Ct. 297, 4 L.Ed.2d 268] (1960).

411 U.S. at 432, 93 S.Ct. at 1643.

Affirmed.