UNITED STATES of America,
Plaintiff-Appellee,

v.

Allen K. SMITH, Defendant-Appellant.

No. 75–2781.

United States Court of Appeals,
Ninth Circuit.

March 24, 1976.

Gerald R. Pullen (argued), Portland, Or., for defendant-appellant.

Tommy Hawk, Asst. U. S. Atty. (argued), Portland, Or., for plaintiff-appellee.

OPINION

Before WALLACE and KENNEDY, Circuit Judges, and FERGUSON,* District Judge.

WALLACE, Circuit Judge:

Smith was convicted of conspiracy to manufacture and conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He appeals, raising three questions. First he claims that the district court erred in recessing for the day in the middle of his cross-examination of the government's informant. He next

---

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

characterizes the government's conduct during the investigation of the case as so outrageous as to violate his due process rights. Finally, he contends that the government's postarrest conduct requires reversal. We affirm.

## I. Recess During Cross-Examination

■ During the cross-examination of the informant witness, who was obviously a key to the government's case, the district judge recessed until the following morning. At that time, the informant had been on the stand for three hours; the examination continued for one hour the next day. Smith believes that he was on the threshold of destroying the informant's credibility and that the recess allowed the government to counsel with the witness and to prepare him for the final period of the cross-examination.

The recess was called at 4:30 p. m. There is no explanation in the record for this other than that this was a normal time to suspend proceedings for the evening. Although the district judge, after the jury was released, made some strong statements as to how he felt about the credibility of the witness, we fail to see where an abuse of discretion has been demonstrated. *Carter v. United States,* 373 F.2d 911, 914 (9th Cir. 1967).

## II. Involvement of Law Enforcement Agents

■ Smith next contends that the government informant's involvement in the crime itself was conduct so shocking as to bar prosecution on due process grounds. In *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366, 373 (1973), the Court suggested that involvement of government agents in a crime might bar prosecution if the methods used violate a "fundamental fairness, shocking to the universal sense of justice." As we stated in *United States v. Lue,* 498 F.2d 531 (9th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 513, 42 L.Ed.2d 306 (1974), this is not an entrapment defense and does not involve the subjective issue of predisposition. This

defense is founded on due process and is reserved for the extreme case where the government's activity is "outrageous" or "grossly shocking." *Id.* at 533–34.

■ In determining the due process question before us, the government's activity must be viewed in light of the limited range of law enforcement techniques available for investigating drug manufacturing enterprises. *Russell* highlighted this problem and expressly approved infiltration of and limited participation in unlawful drug-related enterprises as proper investigatory strategies which ordinarily do not violate due process. 411 U.S. at 432, 93 S.Ct. at 1643, 36 L.Ed.2d at 373.

■ But Smith contends that here a different result should obtain. He first points to the preparatory aid the government informant supplied. The informant was argued to have provided 100 grams of mercuric chloride (which is readily available on the open market), some glass tubing and $750, and, on one occasion, to have helped in transporting some phenyl-2-propanone. This conduct clearly falls within the infiltration activities allowed by *Russell* and *Lue.*

■ Smith also alleges that fundamental fairness was violated when the government employed a pharmacist and longtime friend of Smith's as an informant to betray him. The basis of Smith's contention seems to be that the choice of informant was too good. The argument is frivolous.

■ Smith further contends that the government was improperly involved in having the informer participate in manufacturing the illegal drugs. However, participation in the manufacturing process does not in and of itself equal outrageous conduct. In *Russell,* the informer had aided in the production of methamphetamine on one occasion, although the Court noted that he "did not otherwise participate in the manufacture of the drug *or direct any of the work.*" 411 U.S. at 426 n. 3, 93 S.Ct. at 1640, 36 L.Ed.2d at 370 (emphasis added). While the informant here participated in setting up and operating the laboratory in

the motor home with Smith over a time period longer than that involved in *Russell,* the informant acted at the direction of Smith. The formula followed in the production of the drug was obtained by Smith. Under the initial agreement, Smith was to be responsible for manufacturing the drug and the informant's only role was to take charge in pressing tablets containing methamphetamine. This conduct is similar to that involved in *Russell* and does not constitute a due process violation.

■ Smith cites the two-week delay between the initial manufacture of approximately one ounce of the drug and the subsequent production of about 550 pounds of the chemical as evidence of governmental conduct which shocks the conscience. This argument falls wide of the mark. It is sound law enforcement practice for the Drug Enforcement Administration to cast its net as far as possible in order to gather evidence on drug violators associated with Smith, as well as to cement its case against him. In *Russell,* there was a month delay between the government's purchase of the illegal drug and the arrest, with a significant amount of the drug left in Russell's possession for potential distribution. 411 U.S. at 426, 93 S.Ct. at 1640, 36 L.Ed.2d at 370. Here there was no danger of distribution at all because the informant turned over all the methamphetamine which Smith produced to the DEA, on the pretext of putting it in a safety deposit box. Thus, the DEA took practical steps to prevent the drug from being dispersed into the channels of commerce and endangering the public while it continued its investigation of Smith's admittedly numerous trafficking associates. One day after Smith had told the informant that he was going to shut down the laboratory, a search warrant was executed and Smith was arrested. Such efficient practices are to be preferred rather than condemned. *Cf. Whitted v. United States,* 411 F.2d 107, 109 (9th Cir. 1969),

cert. denied, 399 U.S. 911, 90 S.Ct. 2204, 26 L.Ed.2d 565 (1970).

Whether we consider the informant's acts singularly or as a whole, "[t]he law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *United States v. Russell, supra,* 411 U.S. at 432, 93 S.Ct. at 1643, 36 L.Ed.2d at 373.

### III. Postarrest Government Activity

■ Smith's next attack is on events occurring subsequent to his arrest. The first instance of misconduct alleged is the isolation of Smith after his arrest and the refusal to allow him to see an attorney until he had given a statement, in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When Smith was arrested, he was given the *Miranda* warnings, including his right to counsel, and taken to the DEA office in Portland for processing. Although he expressed a desire to talk to his lawyer, Smith was told that he could not do so until he had made a statement or had spent a number of hours in the DEA office. Smith eventually made inculpatory statements while isolated in a room for interrogation. This procedure, he contends, was in violation of the *Miranda* requirement that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723.

We need not reach the question whether there was a violation of the *Miranda* rules [1] since even if there were, there would be no error in this case. The government did not attempt to introduce his statements into evidence in its case-in-chief but used them rather for impeachment during cross-examination of Smith. The Supreme Court specifically upheld this procedure in *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d

---

1. Nor need we be concerned about the continuing vitality of the *Miranda* rule itself questioned in the petition for certiorari in *Brewer v. Williams,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d

404, *granting cert. to* 509 F.2d 227 (8th Cir. 1975); *cf. Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (noting the failure of the parties to raise this issue).

570 (1975). *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Use of an otherwise excludable statement for impeachment was allowed in *Hass* if it met standards for trustworthiness. Using impeaching statements would aid the jury in assessing the defendant's credibility while barring their admission as substantive evidence of the alleged crime would maintain a sufficient deterrent effect on proscribed police conduct. To prohibit all uses of such statements would pervert the holding of *Miranda* into a shield protecting a defendant's perjurious testimony from confrontation with trustworthy inconsistent utterances. 420 U.S. at 722–23, 95 S.Ct. at 1221, 43 L.Ed.2d at 577–78.

The police conduct here does not distinguish this case from *Hass.* There, the incriminating · evidence in question was received after the police officer had properly said that Hass could telephone a lawyer as soon as they arrived at the office, but improperly continued the interrogation in the car after the defendant had asked to call his attorney. The Court recognized that its holding might encourage misguided police officers to continue their questioning in these circumstances, since they would have little to lose while standing to garner impeachment material. However, the Court stated:

> If, in a given case, the officer's conduct amounts to abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness.

420 U.S. at 723, 95 S.Ct. at 1221, 43 L.Ed.2d at 578. Smith did not move to suppress the use of his statements for impeachment purposes and thus implicitly conceded that they were not coerced or involuntary. While we cannot condone any violations of *Miranda* rules, the government cannot be faulted in employing the statements during cross-examination of Smith.

Smith raises three additional instances of alleged governmental misconduct, all of which lack merit. In light of free press considerations, there was no impropriety in affording television coverage of the mobile home when it was brought to the DEA office. Nor was it error to present testimony of an informant who had been convicted of a misdemeanor in the past and was thought to be unreliable by the trial judge. It was for the jury to assess his credibility. Finally, there was no evidence whatsoever that the government induced the informant to commit perjury. Nor was it an abuse of discretion to curtail cross-examination of the informant so as to exclude hearsay statements made by the government attorney to the informant during the recess that interrupted the informant's testimony. *See United States v. McGregor,* 529 F.2d 928 (9th Cir. Jan. 9, 1976).

AFFIRMED.