UNITED STATES of America,
Plaintiff-Appellee,

v.

**Dale H. PRAIRIE, Defendant-Appellant.**

No. 77–2271.

United States Court of Appeals,
Ninth Circuit.

Feb. 1, 1978.

Rehearing En Banc Denied April 10, 1978.

Lee Petersen, of Gregg, Fraties, Petersen, Page & Baxter, Anchorage, Alaska, for defendant-appellant.

Nelson P. Cohen, Asst. U. S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Before KILKENNY and WALLACE, Circuit Judges, and PALMIERI,* District Judge.

* Honorable Edmund L. Palmieri, United States District Judge, Southern District of New York, sitting by designation.

WALLACE, Circuit Judge:

Prairie appeals from a two-count conviction for distribution of a controlled substance (cocaine) in violation of 21 U.S.C. § 841. We affirm.

## I.

Prairie was employed as a cab driver in Anchorage, Alaska. In late November 1976, Prairie accompanied Boles, a fellow cab driver, to a motel room where Cayton was staying. The purpose of the visit was to collect money owed by Cayton to Boles as a result of prior drug transactions. Prairie was unaware that Cayton had been a paid government informant, and that state drug enforcement officers were paying Cayton's rent and food expenditures from money owed to her in return for her participation in several recent drug cases.

A few days later Boles told Prairie that Cayton wanted to purchase some cocaine. Without further encouragement, Prairie purchased a gram of cocaine and took it to Cayton's room. Cayton informed Prairie that she only had $50 and therefore could not purchase the entire gram. Prairie sold Cayton half of the gram and left. Later that day, Cayton telephoned Prairie and persuaded him to bring her the remaining half-gram of cocaine upon her representation that she would pay him the following day. During the ensuing days, Prairie and Cayton saw each other frequently, and Prairie continued to supply Cayton with cocaine.

On November 26, 1976 Cayton telephoned Grimes, a state drug enforcement officer, and informed him that she knew a taxicab driver who was willing to sell cocaine. Grimes requested that Cayton arrange a meeting between him and Prairie. The meeting was arranged and Grimes and Prairie met later that day at Cayton's motel room. Officer Grimes was equipped with a miniature transmitter which allowed other officers to tape record the conversation.

Prairie told Officer Grimes about his extensive experience in drug transactions and they discussed the creation of a cocaine-distribution operation. No drugs were purchased on this occasion, but Prairie agreed to sell Grimes a cocaine "sample" at a later time.

Officer Grimes and Prairie met again on December 2 in Cayton's motel room. During this meeting Prairie sold Grimes one gram of cocaine. In addition, they discussed the creation of the cocaine-distribution plan.

During the last hours of December 7, Grimes and Prairie spoke by telephone and agreed to meet in order for Grimes to purchase a larger quantity of cocaine. Later that night, the two men met at a bar and traveled to Prairie's residence to pick up the cocaine. On this occasion, Prairie sold Officer Grimes two and one-fourth ounces of cocaine. Prairie was arrested at the conclusion of the transaction.

Prairie was convicted on two counts of distribution, pertaining to the December 2 and December 8, 1976 transactions. Prairie now raises four separate grounds for reversal, none of which is persuasive.

## II.

Prairie's first contention is that the government's conduct in this case is sufficiently outrageous and "shocking to the universal sense of justice" that due process principles bar his conviction.

■ This defense is, of course, based upon Mr. Justice Rehnquist's oft-quoted dictum in *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). There, the Court held that the defendant's predisposition rather than the government's conduct should be the object of scrutiny in considering the applicability of the traditional, non-constitutional defense of entrapment.[1] In so holding, how-

---

1. These differing concepts of entrapment have been termed, respectively, the "subjective" and "objective" theories of entrapment. By approving the subjective theory, the Court in *Rus-* *sell* adhered to the rule announced in *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). *See United States v. Esquer-Gamez*, 550 F.2d 1231, 1233–34 (9th Cir. 1977);

ever, the Court commented that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction. . . ." *Id.*[2]

The Supreme Court again considered this defense in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Despite the lack of a majority opinion, we have read the *Hampton* opinions as permitting a due process defense based on the outrageous nature of the government's conduct.[3] *United States v. Gonzales,* 539 F.2d 1238, 1239 (9th Cir. 1976); *United States v. Gonzalez-Benitez,* 537 F.2d 1051, 1055 (9th Cir.), *cert. denied,* 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976). *Accord, United States v. Leja,* 563 F.2d 244 (6th Cir. 1977); *United States v. Reifsteck,* 535 F.2d 1030, 1035 (8th Cir. 1976).

The gravamen of Prairie's claim is that the government employed a prostitute to emotionally and sexually seduce Prairie and thereby persuade him to deal in illicit drugs. This assertion is without merit. The record is clear that Cayton was neither paid nor asked by the agents to establish any particular relationship with Prairie and, in any event, her official role was limited to that of introducing a willing seller of narcotics to a willing purchaser. Moreover, it is clear that the use of paid informants and undercover police officers to ferret out drug

dealers is not violative of due process principles.[4] *See, e. g., United States v. Gonzalez-Benitez, supra,* 537 F.2d at 1055; *United States v. Spivey,* 508 F.2d 146, 149 (10th Cir.), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. Arias-Diaz,* 497 F.2d 165, 169 (5th Cir. 1974), *cert. denied,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975).

### III.

Prairie also argues that the trial court erred in refusing to give a requested instruction which would have placed the due process defense before the jury. We recently stated:

> The question of whether the agents' actions were a violation of due process was one of law, and properly determined by the district court. Appellant['s] . . . contention that the district court erred by failing to submit the question to the jury is therefore without merit.

*United States v. Gonzales, supra,* 539 F.2d at 1240 n. 1. *Accord, United States v. Quinn,* 543 F.2d 640, 648 (8th Cir. 1976). We adhere to this position.

### IV.

Prairie's next contention is that the trial court erred in refusing to find as a matter of law that Prairie was entrapped.

In *United States v. Rangel,* 534 F.2d 147 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct.

---

*United States v. Reynoso-Ulloa,* 548 F.2d 1329, 1334–36 (9th Cir. 1977). *See generally,* The Supreme Court, 1972 Term, 87 Harv.L.Rev. 55, 243–252 (1973).

**2.** We have acknowledged that a criminal defendant may have a due process defense where the government's conduct is sufficiently outrageous. *See, e. g., United States v. Smith,* 538 F.2d 1359, 1361 (9th Cir. 1976); *United States v. Lue,* 498 F.2d 531, 533–34 (9th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 513, 42 L.Ed.2d 306 (1974).

**3.** Regardless of how the plurality opinion in *Hampton* is read, a majority of the Court expressly refused to rule that due process principles could not prevent conviction in a case where, even though the defendant was predisposed to commit the crime, the government's conduct is sufficiently offensive. 425 U.S. at

495, 96 S.Ct. 1646 (Powell & Blackmun, JJ., concurring in judgment) and *id.* at 497, 96 S.Ct. 1646 (Brennan, Stewart & Marshall, JJ., dissenting).

**4.** Prairie relies heavily on the contention that the government's conduct in paying Cayton's living expenses violated Alaska's criminal laws concerning prostitution. However, the record is clear that Cayton's expenses were paid from funds she had earned by testifying in prior drug cases and that the agents were unaware of her daily activities. In any event, even assuming that the government's actions were illegal, such conduct does not, without more, give rise to a due process defense. *Hampton v. United States, supra,* 425 U.S. at 490, 96 S.Ct. 1646; *United States v. Spivey, supra,* 508 F.2d at 149.

**1320**

147, 50 L.Ed.2d 129 (1976), we explained that "[e]ntrapment as a matter of law exists only when there is undisputed testimony making it *patently clear* that an otherwise innocent person was induced to commit the act complained of by the trickery, persuasion or fraud of a government agent." *Id.* at 149 (emphasis added).

In light of this standard, our review of the entire record leads us to conclude that the entrapment issue was properly presented to the jury. Certainly, Prairie's own testimony regarding his prior experience in the use and distribution of illegal drugs coupled with the fact that he sold Cayton cocaine before the agents became involved is sufficient evidence to create a jury question on the issue of entrapment.

## V.

■ Prairie's final contention is that the district judge erred in refusing to admit certain testimony regarding Cayton's sexual activity and her willingness to exchange sex for illegal drugs. The relevance of the proffered testimony, argues Prairie, is to demonstrate the outrageousness of the government's conduct and the nature of the alleged entrapment. Our careful review of the entire record leads us to conclude that the error, if any, in refusing to admit the offered testimony was harmless. Fed.R. Crim.P. 52(a).

AFFIRMED.