UNITED STATES of America, Plaintiff,

v.

**Gary Hugh ORTON, Defendant.**

**Crim. No. 90–22–FR.**

United States District Court,
D. Oregon.

July 31, 1990.

Charles H. Turner, U.S. Atty., James L. Collins, Asst. U.S. Atty., Portland, Or., for plaintiff.

Steven T. Wax, Federal Defender, Scott Erik Asphaug, Asst. Federal Defender, Portland, Or., for defendant.

## OPINION

FRYE, Judge:

The matter before the court is the motion of defendant, Gary Hugh Orton, to dismiss the charges against him on the grounds that the conduct of the government in investigating and prosecuting him constituted entrapment as a matter of law or was so outrageous that it violated Orton's right to due process of law.

On January 24, 1990, Orton was indicted on two counts of mailing visual depictions of minors engaging in explicit sexual conduct in violation of 18 U.S.C. § 2252(a)(1).

## UNDISPUTED FACTS

Prior to October, 1989, Bruce Ackerman, an investigator for the Wallowa County Prosecutor, placed an advertisement in a publication called *Swinger's Hotline* under the name of "Julie Alworth." The advertisement stated: "W/F [white female], 29, HAVE UNUSUAL desires. Seek others who have similar experience. Have many fantasies. I can't be the only one. J.A., 4409 N. 16th #1013, Phoenix, Arizona 85016." In October, 1989, Orton responded to the advertisement with a letter describing himself. He stated that he was looking for a woman to accompany him on a trip to Bora Bora. Orton enclosed a photograph of himself with the letter.

Ackerman, writing as Julie, then sent Orton the following letter:

Thank you for answering my ad. What you had to say sounds very interesting. The trip sounds like [a] dream. I must tell you though that my main interest is in youth. If you share this I would love to hear from you. If not I understand.

I will keep your name and address in a safe place and give it to any other women who might have an interest. I am returning your photo even though I would like to keep it. Thank you again for writing to me. Hope that you have a wonderful time in Bora Bora.

On October 31, 1989, Ackerman received a second letter from Orton, in which Orton indicated, among other things, that he had an interest in youth; that as the manager of a photo lab he was able to develop prints for friends; that he had printed a roll of film for a woman which contained photographs of nude youths; that he loved to take such pictures, but it was hard to find "young ones" to take pictures of; that he would print such photographs for Julie if she could obtain them; and that he would like Julie to describe her fantasies for him.

On November 4, 1989, Ackerman, writing as Julie, sent Orton a letter describing her interest in youth and asking Orton a number of questions on the subject and on his ability to develop photographs. The letter stated: "I would love to see what ever you want to send me."

Orton responded with a detailed letter offering to develop any photographs of youth that Julie could send, describing photographs that he had seen, and asking Julie to send any negatives or photographs that she might have. Julie's next letter indicates that Orton had sent her some photographs with his previous letter, including a photograph of a twelve-year-old. The letter states that Julie has given Orton's name to another woman, Erica, who enjoys the same things.

In late November, 1989, Postal Inspector Paul Groza sent a letter to Orton under the name Erica. The letter expressed an interest in youth and a wish to have photographs developed and to exchange photographs. In response, Orton sent a letter and photographs of minors to Erica, offering to develop photographs and to exchange photographs of youth, as well as other types of pornography.

## ANALYSIS AND RULING

■ Orton contends that as a matter of law he was entrapped by the letters sent by law enforcement officials under the names of Julie and Erica. Orton also contends that the conduct of the government was so outrageous as to amount to a violation of due process.

In order to show entrapment as a matter of law, there must be undisputed testimony making it patently clear that an otherwise innocent person was induced to commit the act complained of by the trickery, persuasion or fraud of a government agent. *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821 (9th Cir.1985). The controlling question is whether the defendant lacked the predisposition to commit the act. *Id.*

In determining whether a defendant is predisposed to commit a particular crime, the court examines:

> [T]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. Reynoso–Ulloa*, 548 F.2d 1329, 1336 (9th Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978) (footnotes omitted). Although none of these factors is controlling, the defendant's reluctance to engage in criminal activity is the most important factor. *United States v. Busby*, 780 F.2d 804, 807 (9th Cir.1986). Government initiation of the illegal activity is one factor to be considered, but it is not determinative so long as the government only provides the defendant with an opportunity to commit a crime which he was already predisposed to commit. *Id.*

The Sixth Circuit has refused to find entrapment as a matter of law in two cases involving charges under 18 U.S.C. § 2252.[1] In *United States v. Johnson*, 855 F.2d 299 (6th Cir.1988), postal inspectors placed an advertisement in *Screw Magazine* which offered the sale of materials depicting "Youthful Interests," "Fun Farm," and "Latin Family Fun." Johnson responded to the advertisement with a letter stating "I am interested in family fun and *young* girls. I will buy 8mm films, magazines and photo sets, (Hard core only)." *Id.* at 300 (emphasis in original). Johnson subsequently corresponded with postal inspectors using various fictitious identities and eventually mailed magazines containing sexually explicit photographs of children to a postal inspector.

The Sixth Circuit found it significant that Johnson voluntarily responded to an advertisement, that Johnson was the first to express a desire to exchange pedophilic materials, that Johnson had previously used the mails to exchange such materials, and that Johnson disregarded a warning that law enforcement officials might discover his correspondence. *Id.* at 304.

In *United States v. Nelson*, 847 F.2d 285 (6th Cir.1988), federal authorities seized a letter from Nelson while conducting a search of another individual's residence. Nelson's letter sought correspondence with or photos of "a mature bi-lady and a young one, especially if its her daughter." *Id.* at 286. A postal inspector then sent five letters to Nelson, purportedly from different sources, but all offering or indicating an interest in child pornography. Nelson ignored the first four letters, but responded to the fifth letter, which advertised a catalog of video tapes featuring child pornography. In further correspondence, Nelson ordered and received such a video tape.

The Sixth Circuit found that the evidence could support a finding of predisposition, despite the fact that Nelson responded only after four unsuccessful contacts. *Id.* at 287. The court relied on the letter quoted

---

1. The parties have not cited any entrapment cases relating to 18 U.S.C. § 2252 from the Ninth Circuit. The approach of the Sixth Circuit in entrapment cases is consistent with the approach of the Ninth Circuit.

above, and on pedophilic materials found in a search of Nelson's home.

However, Orton relies on *United States v. Jacobson,* 893 F.2d 999 (8th Cir.) *reh'g. granted and opinion vacated by* 899 F.2d 1549 (8th Cir.1990), in which the Eighth Circuit held that the defendant was entrapped when the government targeted an undercover investigation at him after learning that he had ordered two nudist magazines. The court found that the purchase of legal nudist magazines was not evidence of a predisposition to violate 18 U.S.C. § 2252 and did not give rise to a reasonable suspicion based on articulable facts that Jacobson had committed a crime in the past or was likely to commit a crime in the future. *Id.* at 1000.

In this case, Orton responded to an advertisement placed by government authorities in *Swinger's Hotline.* Neither the advertisement nor Orton's first letter suggested an interest in child pornography. The first letter sent by "Julie" to Orton initiated the subject with the words "I must tell you though that my main interest is in youth. If you share this I would love to hear from you. If not I understand." Orton responded enthusiastically with the information that he had an interest in "youth," and that he would print photographs of nude youths for Julie if she could obtain them.

Similarly, when Orton received a letter from Erica which expressed an interest in youth and a wish to have photographs developed and to exchange photographs, Orton did not hesitate or demur, but sent photographs of minors to Erica and offered to exchange photographs of youth. This behavior does not reflect "trickery, persuasion, or fraud of a government agent," (*see Hsieh Hui Mei Chen, supra,* 754 F.2d at 821) but rather a situation where the government only provided Orton with an opportunity to commit a crime which he was already predisposed to commit (*see Busby, supra,* 780 F.2d at 807).

Moreover, in the search of Orton's residence, the government seized materials which further evidence his predisposition. These materials include correspondence from Ruth and Eli Ron, residents of the country of Israel, which indicates that Orton had sent some photos to them, and that he was going to send negatives of young boys to them. Further, there was a letter sent to Orton in July, 1989 from "N.W." in Miami, Florida, in which the author warned Orton that:

> I got a great wave of *fear* when you said people are writing you for pictures of 14 to 18 year old girls and "nudes of boys 14 to 18." The reason that frightened me is that the post office has a sting operation around the country that busts folks involved in child pornography and you may be targeted. *That is a very serious situation!* I would drop those people immediately. We're talking prison here. I'm not kidding.... Stay clear of that stuff. (Emphasis in original).

Orton's behavior in disregarding this warning is very similar to the behavior of the defendant in *Johnson,* who ignored advice that "[p]ostal officials and law enforcement are everywhere." 855 F.2d at 301.

This case is distinguishable from *Jacobson, supra,* because the government did not target Orton for investigation after learning his identity from other sources. Orton responded to an advertisement placed by the government, and his interest in child pornography became apparent through the ensuing correspondence. The weight to be accorded to *Jacobson* is also affected by the fact that the Eighth Circuit has granted a rehearing *en banc* of the matter.

Thus, the court concludes that there is ample evidence from which a jury could find that Orton was predisposed to commit the offense, and the court cannot rule as a matter of law that the conduct of the government constitutes entrapment.

■ Orton also contends that the conduct of the government was so outrageous as to amount to a violation of his right to due process of law. The Supreme Court has left open the possibility that the court "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the

government from invoking judicial processes to obtain a conviction." *United States v. Prairie,* 572 F.2d 1316, 1319 (9th Cir.1978) (quoting *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)).

The defense of outrageous governmental conduct could be applicable despite the fact that the defendant was predisposed to commit the crime. 572 F.2d at 1318. However, this defense has rarely been accepted by the courts. In *Prairie,* the court stated that "the use of paid informants and undercover police officers to ferret out drug dealers is not violative of due process principles." *Id.* at 1319.

In *Johnson, supra,* the Sixth Circuit rejected a claim of outrageous governmental conduct in very similar circumstances, where the defendant engaged in correspondence with postal inspectors who wrote under fictional identities. 855 F.2d at 304–05. The court stated: "Because the transmission of child pornography through the mails occurs within a shroud of secrecy, it is apparent that the use of an advertisement in *Screw Magazine* and personal correspondence by a postal inspector posing as a pedophilic collector was justified to detect and investigate violations of 18 U.S.C. § 2252." *Id.* at 305.

The Ninth Circuit has not addressed a claim of outrageous governmental conduct in the context of a charge under 18 U.S.C. § 2252. In the recent case of *United States v. Luttrell,* 889 F.2d 806, 813 (9th Cir.1989), the court stated that "police officers violate constitutional norms when, without reasoned grounds, they approach apparently innocent individuals and provide them with a specific opportunity to engage in criminal conduct." The Ninth Circuit then remanded the case to determine whether the government had a factual basis for targeting the defendant for investigation. *Id.* at 814.

Under the rationale of *Luttrell,* Orton may have sufficient evidence to go to the jury on the theory of outrageous governmental conduct. However, on the present record, the court cannot rule as a matter of law that the conduct of the government violated Orton's right to due process of law.

## CONCLUSION

Orton's motion to dismiss the charges against him is denied.