963 F.2d 381
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Phillip LUSCHEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Delbert CRAWFORD, Defendant-Appellant.
 Nos. 91-30159, 91-30215.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1992.
Decided May 28, 1992.
 
 Before PREGERSON, TROTT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I OVERVIEW
 
 2
 The Drug Enforcement Administration ("DEA") suspected Frank Palmer of trafficking in narcotics. Palmer offered to sell methamphetamine to an undercover DEA agent, and introduced the agent to the two appellants in this case, Phillip Luschen and Delbert Lee Crawford. The DEA agent agreed to provide Palmer, Luschen, and Crawford (collectively, the "defendants") with certain precursor chemicals for the manufacture of methamphetamine, and the defendants agreed to perform a "cook." As Crawford and Luschen took possession of the precursor chemicals, they were arrested. Ultimately, a jury convicted them of conspiracy to manufacture and distribute methamphetamine. They appeal their convictions and sentences, claiming numerous errors. We affirm.
 
 II ANALYSIS
 
 3
 1. Did the district court err in joining the counts and defendants (Crawford and Luschen)?
 
 
 4
 Crawford claims it was error to join his trial with Palmer's, because Palmer's distribution of methamphetamine to DEA Agent Dunne was not related to Crawford's conspiracy with Palmer and Luschen to manufacture and distribute methamphetamine to Agent Dunne. Luschen admits joinder was proper, but some of his arguments concerning severance use the criteria relevant to joinder. The issues are closely related, and we consider here both Crawford's argument on joinder, and Luschen's relevant arguments on severance. We review de novo the joinder in one indictment of different defendants and counts. See United States v. Vaccaro, 816 F.2d 443, 448 (9th Cir.), cert. denied, 484 U.S. 914 (1987).
 
 
 5
 Joinder is proper where the defendants engaged in related criminal acts.
 
 
 6
 Joinder of two or more defendants in the same indictment is governed by Fed.R.Crim.P. 8(b), which provides:
 
 
 7
 Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count....
 
 
 8
 Whether the separate acts charged constitute a "series of acts or transactions" depends upon their being sufficiently related to each other.
 
 
 9
 Id. (quoting Fed.R.Crim.P. 8(b)).
 
 
 10
 We find joinder was proper. Palmer's distribution to Agent Dunne of methamphetamine (count one) was related to Crawford's, Luschen's, and Palmer's conspiracy to manufacture and distribute to Agent Dunne twelve to sixteen pounds of methamphetamine (count two). In each count, the drug was the same, the buyer was the same, one of the defendants was the same, and the exchange of precursor chemicals for finished product was the same; the two crimes took place only a few months apart, and were discovered as part of the same investigation by the same undercover DEA agent. Even reviewing de novo, see id., the acts charged were sufficiently "logically interrelated" to be part of the same series of transactions. United States v. Felix-Gutierrez, 940 F.2d 1200, 1208 (9th Cir.1991).
 
 
 11
 Crawford also claims joinder was improper because there was in fact no conspiracy. This argument is either an attempt to bootstrap, or an attack on the sufficiency of the evidence used to convict. Crawford correctly admits the jury's verdict that there was a conspiracy is "plausible," and so his claim lacks merit. See United States v. Sanchez-Mata, 925 F.2d 1166, 1166 (9th Cir.1991).
 
 
 12
 2. Did the district court err in refusing to sever the counts and defendants (Crawford and Luschen)?
 
 
 13
 Assuming joinder was proper, both Crawford and Luschen claim it was an abuse of discretion not to sever their trials from Palmer's trial. We review for abuse of discretion the district court's refusal to sever the defendants or counts. See United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir.1987). Crawford focuses on the need for Palmer's testimony, claiming the testimony would have exculpated him.
 
 
 14
 In considering a defendant's claim that a co-defendant will provide exculpatory testimony, a district court must weigh a number of factors, among them, "the good faith of the defendant's intent to have a co-defendant testify, the possible weight and credibility of the predicted testimony, the probability that such testimony will materialize, [and] the economy of a joint trial." This list is not exclusive. We now join a parade of circuits in holding that a district court must also consider the exculpatory nature and effect of the desired testimony--in other words, the degree to which the asserted co-defendant testimony is exculpatory.... Given the extremely narrow scope of our review, we hold that a moving defendant must show more than that the offered testimony would benefit him; he must show that the co-defendant's testimony is "substantially exculpatory" in order to succeed. A showing that the testimony would merely contradict portions of the government's proof is insufficient.
 
 
 15
 United States v. Mariscal, 939 F.2d 884, 885-86 (9th Cir.1991) (citations omitted; alterations in original).
 
 
 16
 Crawford satisfied some of the Mariscal factors. He did attempt to call Palmer. On August 15, 1990, the date of the superseding indictment in this case, Palmer signed an affidavit which stated he would testify if called at a separate trial. Palmer stated he would testify Crawford did not own or know of the laboratory items seized from Crawford's own car, and that there was no conspiracy to manufacture methamphetamine.
 
 
 17
 However, we hold Palmer's testimony would not have been "substantially exculpatory" as that term is used in Mariscal. The government claims Palmer would not have been a credible defense witness in light of his criminal record and his testimony in a prior case that he was afraid of Agent Dunne. The government argues Palmer's fear of Agent Dunne is inconsistent with Crawford's asserted defense, a plan to swindle Dunne.
 
 
 18
 We affirm the denial of severance because Crawford has not demonstrated " 'clear,' 'manifest,' or 'undue' prejudice from the joint trial," or that the prejudice resulting from joinder was "of such magnitude that [he] was denied a fair trial." United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.) (citations omitted), cert. denied, 449 U.S. 856 (1980). "Given the extremely narrow scope of our review," Mariscal, 939 F.2d at 886, we conclude the district court's denial of severance was not an abuse of discretion.
 
 
 19
 Luschen claims he deserved severance from Palmer because the joint trial with Palmer allowed the government to introduce evidence which undermined Luschen's defense of intoxication. By admitting this evidence, the court allowed the jury to "conclude that even though [Luschen] may have been intoxicated and unable to form the requisite intent from May 31 to June 7, that nonetheless [he] was one of the unnamed and unknown sources" with whom Palmer was dealing before he began conspiring with Luschen and Crawford.
 
 
 20
 We reject Luschen's argument. The judge instructed the jury to consider separately the evidence against each defendant. We presume the jury followed that instruction. See Escalante, 637 F.2d at 1201. The hypothetical prejudice Luschen offers does not rise to the level required to mandate a severance. See Patterson, 819 F.2d at 1501.
 
 
 21
 3. Did the district court err in refusing to dismiss the case for vindictive prosecution (Crawford)?
 
 
 22
 Crawford claims he vindictively was prosecuted. He relies on the following facts: (1) Crawford was arrested on state charges before being indicted by the federal grand jury; and (2) the superseding indictment broadened the possible time-frame of the conspiracy. These arguments were rejected by the district court. We do the same.
 
 
 23
 Even reviewing de novo, United States v. Martinez, 785 F.2d 663, 665-66 (9th Cir.1986), we conclude Crawford has not established even the appearance of vindictiveness.
 
 
 24
 A defendant alleging vindictive prosecution has the burden of showing an appearance of vindictiveness.... There is an appearance of vindictiveness when there is a reasonable likelihood that the prosecutor would not have filed charges but for hostility towards the defendant because the defendant exercised his or her legal rights.
 
 
 25
 United States v. Clay, 925 F.2d 299, 302 (9th Cir.1991) (citations omitted), disapproved on other grounds, Gozlon-Peretz v. United States, 111 S.Ct. 840 (1991). Crawford has not clearly identified the legal right which he exercised to trigger the government's hostility. Further, the record reveals the state charges were filed to prevent the defendants from completing their "cook" because the Assistant United States Attorney and the federal grand jury temporarily were unavailable; federal charges ultimately were filed because the federal government had conducted the investigation. We reject Crawford's allegations.
 
 
 26
 4. Did the district court err in refusing to dismiss the case for outrageous governmental conduct (Crawford and Luschen)?
 
 
 27
 Crawford and Luschen argue the government's investigation in this case was " 'so grossly shocking and so outrageous as to violate the universal sense of justice.' " United States v. Citro, 842 F.2d 1149, 1152 (9th Cir.) (citations omitted), cert. denied, 468 U.S. 866 (1988). We review de novo the district court's refusal to dismiss the case for outrageous governmental conduct. Id.
 
 
 28
 Crawford and Luschen rely on Greene v. United States, 454 F.2d 783 (9th Cir.1971), to support their claims of outrageous governmental conduct. However, this case is distinguishable from Greene. Here, unlike in Greene, the government did not pressure the defendants into illegal activity. See Greene, 454 F.2d at 785-86 & n. 3. Crawford alleges in his reply brief that Agent Dunne "continually pressed" that Palmer use precursor chemicals supplied by the DEA rather than his own materials. This allegation relates to the government's efforts to control the manufacturing process that the defendants were conducting. Here, as in Citro, it was the defendants, especially Palmer, who initiated and escalated the conspiracy. See Citro, 842 F.2d at 1153.
 
 
 29
 We affirm the denial of Crawford's and Luschen's motions because the government's conduct was permissible. Cf. United States v. Phelps, 877 F.2d 28, 31 (9th Cir.1989) (government may provide ephedrine to methamphetamine producer); United States v. Smith, 538 F.2d 1359, 1361-62 (9th Cir.1976) (government may provide mercuric chloride, glass tubing, and cash to methamphetamine producer; government informant may participate in production and in setting up laboratory).[1]
 
 
 30
 5. Did the district court err in refusing to dismiss the case for lack of jurisdiction because methamphetamine is not a controlled substance (Crawford)?
 
 
 31
 Crawford claims methamphetamine is not a controlled substance, and so there was no crime, and no subject matter jurisdiction in the district court. He bases his argument on 21 U.S.C. § 811(g)(1) (1988), which requires the Attorney General to exclude from the schedules of controlled substances any substance which may be sold without a prescription, and on 21 C.F.R. § 1308.22 (1989) (amended 1990), which allows the nonprescription sale of Vicks Inhaler and Rynal Spray, both of which contain methamphetamine or the chemical equivalent. Crawford's argument is foreclosed by United States v. Caperell, 938 F.2d 975, 978-79 (9th Cir.1991).
 
 
 32
 6. Did the district court err in admitting certain evidence (Crawford)?
 
 
 33
 Crawford objects to the admission of four pieces of evidence: (1) testimony concerning Palmer's distribution to Agent Dunne of methamphetamine; (2) testimony concerning Palmer's distribution to Agent Dunne of cocaine; (3) statements made by Luschen in November, 1990; (4) a report of drug property collected, purchased, or seized (prepared 6/7/90). We review for abuse of discretion the district court's admission of evidence. United States v. Tham, 948 F.2d 1107, 1112-13 (9th Cir.1991).
 
 
 34
 Crawford omits record cites and arguments for numbers (1), (3), and (4). Accordingly, we reject those claims without addressing their merits. See Fed.R.App.P. 28(a)(4); Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988) ("Issues raised in a brief which are not supported by argument are deemed abandoned.... We will only review an issue not properly presented if our failure to do so would result in manifest injustice" (citations omitted)); cf. United States v. Turner, 898 F.2d 705, 712 (9th Cir.) (issue deemed abandoned where appellant merely adopted by reference the arguments of his co-appellant), cert. denied, 495 U.S. 962 (1990). Although sanctions are available for Crawford's failure to cite to the record, see Mitchel v. General Elec. Co., 689 F.2d 877, 878-79 (9th Cir.1982) (per curiam), cited in 9th Cir.R. 28-2 (circuit advisory committee note), we have decided not to impose them here.
 
 
 35
 Even if we were to reach the merits of Crawford's claims, we would reject the claims. Crawford's only stated argument relates back to his objections jointly to trying the three defendants. Crawford's arguments depend on his arguments on joinder and severance, which we already have rejected.
 
 
 36
 7. Did the sentencing court err in determining under the Sentencing Guidelines the base offense level (Crawford and Luschen)?
 
 
 37
 Luschen claims the district court erred when it sentenced him by resorting to Application Note 1, rather than Application Note 2, of U.S.S.G. § 2D1.4 (1990). We review de novo the district court's interpretation of the Guidelines; we review for clear error underlying factual findings. United States v. Wilson, 900 F.2d 1350, 1355 (9th Cir.1990). Facts used in sentencing need only have been established by a preponderance of the evidence. United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990). We review de novo the district court's determination under the Guidelines of the base offense level. United States v. Ono, 918 F.2d 1462, 1466 (9th Cir.1990).
 
 Section 2D1.4 provides:
 
 38
 (a) Base Offense Level: If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy had been completed.
 
 
 39
 U.S.S.G. § 2D1.4.
 
 
 40
 Application Note 1 provides in pertinent part:
 
 
 41
 If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.
 
 
 42
 Id. (application note 1).
 
 
 43
 Application Note 2 provides in pertinent part:
 
 
 44
 Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.
 
 
 45
 Id. (application note 2).
 
 
 46
 The district court used Application Note 1 because the factors discussed in Application Note 2 were absent from the case. Admitting the factors from Application Note 2 are absent, Luschen argues the court therefore should have concluded no amount could have been produced.
 
 
 47
 We reject Luschen's argument. The two Application Notes are alternative methods for approximating the "object" of a drug conspiracy. Application Note 2 is inapposite, because there were no financial records, no similar past transactions, and no laboratory involved in the case. However, as the district court found, Application Note 1 applies because the defendants negotiated to produce and distribute between ten and sixteen pounds of methamphetamine. We conclude the district court correctly considered Application Note 1.
 
 
 48
 Assuming Application Note 1 governs, Crawford and Luschen argue the district court erred in setting their base offense levels because the district court found they lacked the capability to produce any methamphetamine. This finding, they contend, means their sentences must be reduced to zero.
 
 
 49
 Crawford's and Luschen's argument lacks merit for two reasons. First, by its terms, Application Note 1 requires reduction of the amount "the defendant did not intend to produce and was not reasonably capable of producing." U.S.S.G. § 2D1.4 (application note 1) (emphasis added). None of Crawford's and Luschen's arguments can transform this conjunctive phrase into the disjunctive. See United States v. Brooks, 957 F.2d 1138, 1151 (4th Cir.1992). The district court never questioned their intent to produce methamphetamine, and that alone defeats their argument.
 
 
 50
 Second, Crawford's and Luschen's claim that they were not reasonably capable of producing methamphetamine depends on the district court's tentative findings of fact. The district court's final findings of fact remove any doubt about the defendants' capability:
 
 
 51
 The defendants, in their objections to the court's tentative findings, had questioned the court's statement regarding whether these defendants had the capability or capacity to produce any methamphetamine. The court found that the only reason the court stated that it "sincerely questioned" the defendants' capability or capacity was because of the nature of this "sting" operation and the DEA's failure to produce its part of the agreement; that is, their [sic] failure to provide the necessary lab components and materials, whether assembled or not, at the time of the arrest. The court found that the defendants clearly had the intent and/or personal capability to produce methamphetamine; however, they were missing the necessary "tools" to do an actual cook. The court found that that was the only reason it questioned the defendants' capability or capacity. Accordingly, the court incorporated this clarification into its Final Findings of Fact.
 
 
 52
 The fact that the defendants were arrested before producing the methamphetamine does not mean they lacked the capacity to produce the drug. See United States v. Bertrand, 926 F.2d 838, 846 (9th Cir.1991). Indeed, Application Note 1 to U.S.S.G. § 2D1.4 states: "If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." See United States v. Alvarez-Cardenas, 902 F.2d 734, 736 (9th Cir.1990) (in conspiracy cases, Guidelines level determined by amount defendant conspired to sell, not by amount actually sold). DEA Agent Dunne testified concerning the DEA's policy of not allowing criminals to complete methamphetamine cooks due to the danger involved.
 
 
 53
 Crawford and Luschen also complain that they were sentenced based on a "mythical lab." The district court found the defendants capable of producing the drug. See U.S.S.G. § 2D1.4 (1991) (application note 1); Bertrand, 926 F.2d at 846. We review for clear error whether this fact was established by a preponderance of the evidence. Bertrand, 926 F.2d at 846 ("the capability of a drug operation is a factual issue reviewed for clear error"); Howard, 894 F.2d at 1090. There was no error. Whether or not they had established a laboratory at the time of their arrest, Luschen and Crawford had the capacity to manufacture methamphetamine.
 
 
 54
 Crawford also complains he was sentenced for the acts of his codefendants. He cites the inclusion in the presentence report of contact between Palmer and Agent Dunne. Crawford's claim lacks merit: to the extent that Crawford objects to the inclusion at trial or sentencing of facts relevant to Palmer's crimes, he merely restates his arguments on joinder and severance.
 
 
 55
 8. Did the district court err in refusing under the Guidelines to grant a downward adjustment for a minimal role in the offense (Crawford)?
 
 
 56
 Crawford claims the district court should have reduced his offense level under U.S.S.G. § 3B1.2 (1990) because he was a "minor participant" in the conspiracy. He focuses on the duration of his association with Palmer and Luschen, and his alleged ignorance of how to produce methamphetamine. We review for clear error the district court's refusal under the Guidelines to grant a downward adjustment for a minor role in the offense. United States v. Sanchez, 908 F.2d 1443, 1448-49 (9th Cir.1990).
 
 
 57
 We reject Crawford's argument. The district court concluded Crawford was not a minor participant, because, "[o]nce defendant enters [sic] the picture, he was actively involved in all the negotiations and discussions with the agent. The court finds that there is nothing in the record to substantiate a finding that [Crawford] was any less culpable than his co-defendants...." This finding was not error.
 
 
 58
 9. Did the district court err in calculating under the Guidelines criminal history scores (Crawford)?
 
 
 59
 Crawford claims he was erroneously sentenced as a career offender, because he did not have the requisite prior felony convictions, and any convictions he did have could not be counted under U.S.S.G. § 4B1.1 (1990). We review de novo the district court's calculation under the Guidelines of criminal history scores. United States v. Sanchez, 914 F.2d 1355, 1361-63 (9th Cir.1990), cert. denied, 111 S.Ct. 1626 (1991). We reject Crawford's claims.
 
 
 60
 Section 4B1.1 of the Guidelines provides in pertinent part:
 
 
 61
 A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply.
 
 
 62
 U.S.S.G. § 4B1.1.
 
 
 63
 Crawford was over eighteen at the time he was convicted of the instant drug offense; the only question is whether he has two prior drug or violent offenses.[2] Crawford disputes the use of a 1975 conviction for robbery because it occurred more than fifteen years ago. However, he admits he "was incarcerated for the robbery offense until July 21, 1983," which "extends into the fifteen-year period and, technically is countable in the criminal history category...." Crawford is correct to concede the point: U.S.S.G. § 4B1.2 (application note 4) instructs the sentencing judge to use U.S.S.G. § 4A1.2, which in turn counts all convictions which resulted in the defendant being incarcerated within fifteen years of the instant offense. See U.S.S.G. § 4A1.2(e)(1) (1990). The 1975 robbery conviction properly was counted. Crawford did not contest at least one other countable violent offense, a 1984 conviction for aggravated assault. Crawford correctly was evaluated as a career offender.
 
 
 64
 Assuming he correctly was evaluated as a career offender, Crawford claims the maximum penalty for his present crime was forty years, not life imprisonment, and so his base offense level should have been 34, not 37. Compare U.S.S.G. § 4B1.1(A) (1990) (base offense level of 37 if statutory maximum penalty for instant offense is life), with id. § 4B1.1(B) (base offense level of 34 if statutory maximum penalty for instant offense is 25 years or more, but less than life). Although Crawford was indicted and convicted under 21 U.S.C. § 841(b)(1)(A )(viii) (1988), which provides for a maximum sentence of life imprisonment for manufacturing "100 grams" of cut methamphetamine, Crawford claims the "rule of lenity" requires us to pretend he was convicted for violating 21 U.S.C. § 841(b)(1)(B )(viii), which provides for a maximum sentence of forty years for manufacturing "100 grams" of cut methamphetamine. We reject Crawford's argument: the "instant offense" for the purposes of U.S.S.G. § 4B1.1 is the offense for which Crawford was convicted, a violation of § 841(b)(1)(A ), not § 841(b)(1)(B ).
 
 
 65
 10. Did the district court err in refusing under the Guidelines to depart downward from the applicable sentencing range (Crawford)?
 
 
 66
 Crawford claims the district court erred in refusing to depart downward under the Guidelines. The district court clearly stated it refused to exercise its discretion to depart: "Finally, the court finds that this sentence was imposed after determining that there WERE NO aggravating or mitigating factors sufficient to warrant a departure from the guideline range." The court also noted the defendant's sentence was "appropriate and necessary given the court's desire to impose a sentence that reflects the nature and circumstances of the offense, the history and characteristics of the defendant, and the seriousness of the offense." Accordingly, this court lacks jurisdiction to review the refusal to depart. Sanchez, 914 F.2d at 1363-64.
 
 
 67
 11. Did the district court err in refusing to delete from the Presentence Report allegedly inaccurate information (Crawford)?
 
 
 68
 Crawford claims the information in paragraphs 89 and 90 of the Presentence Report should be expunged. These paragraphs discuss a prior conviction for murder which later was overturned. The Presentence Report notes that Crawford ultimately was acquitted of murder. We review de novo the district court's refusal to delete from the Presentence Report accurate but allegedly prejudicial information. See United States v. Restrepo, 946 F.2d 654, 658 (9th Cir.1991) (en banc).
 
 
 69
 Essentially conceding (as he must) that the Presentence Report is factually accurate in this matter, Crawford's real argument is that the information is prejudicial and irrelevant. This argument lacks merit in light of 18 U.S.C. § 3661 (1988), cited in Restrepo, 946 F.2d at 658, which states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." See also U.S.S.G. § 6A1.3 (commentary).
 
 III CONCLUSION
 
 70
 Luschen and Crawford raise a host of meritless issues. We AFFIRM their convictions and sentences.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 As Luschen points out in his reply brief, the government confuses this United States v. Smith, 538 F.2d 1359 (9th Cir.1976), with United States v. Smith, 893 F.2d 1573 (9th Cir.1990)
 
 
 [2]
 Crawford also claims the Guidelines erroneously consider non-drug felonies in computing career criminal status. He bases his argument on 21 U.S.C. § 841(b), which prescribes a greater statutory penalty for offenders with prior drug convictions. Crawford claims this statutory provision preempts the Guidelines from calculating criminal history scores based on anything other than prior drug convictions. This argument lacks merit because the statute does not preclude the imposition of greater criminal penalties upon defendants with prior non-drug convictions