**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lavern HANKEY, aka Poo,**
**Defendant–Appellant.**

No. 98–50359.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1999

Filed Feb. 18, 2000

Gail Ivens, Glendale, California, for the defendant-appellant.

George S. Cardona, Edward P. Lazarus, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: JAMES R. BROWNING and TASHIMA, Circuit Judges, and JONES,[1] District Judge.

1. The Honorable Robert E. Jones, United States District Judge for the District of Ore-

**1164**

JONES, District Judge:

Lavern Hankey appeals his conviction and sentence for distributing and conspiring to possess with intent to distribute phencylidine ("PCP"). At trial, after Hankey's co-defendant testified that Hankey was not involved in the transactions, the district court admitted rebuttal testimony from a police gang expert that gang members who testify against one of their own are customarily beaten or killed by other members of their gang. In addition, the district court precluded the testimony of a defense lawyer, who was contacted by Hankey's girlfriend the day of his arrest, regarding the circumstances surrounding Hankey's confession. Upon conviction, the district judge sentenced Hankey to 188 months, basing his calculation partly on two drug infractions for which the defendant was not convicted. On appeal, the defendant challenges these three rulings.

1. Did the district court abuse its discretion under either FRE 702 or FRE 403 by admitting, for the limited purpose of impeaching for bias the exculpatory testimony of a co-defendant, the opinions of a police gang expert regarding the "code of silence" and repercussions for testifying against an affiliated gang member?

We conclude that the district court properly discharged its "gatekeeping" function as set forth in the Supreme Court cases of *Kumho Tire, Joiner* and *Daubert*[2] in admitting the gang expert's testimony. Further, with respect to FRE 403, the court did not abuse its discretion in ruling that the probative value of the testimony was not substantially outweighed by unfair prejudicial impact, particularly where the court gave a limiting instruction to the jury.

2. Did the district court abuse its discretion in refusing to allow a defense lawyer, who had been contacted by Hankey's girlfriend on the day of the arrest, to testify that the police told him that Hankey was being released, when in fact Hankey remained overnight and made a confession the next morning?

We hold, absent evidence that Hankey was aware of it, the alleged misconduct was not relevant to the voluntariness of Hankey's confession and therefore was properly kept from the jury.

3. Did the district court err in finding that defendant's "relevant conduct" for the purpose of sentencing included two crimes for which he was not convicted-a drug sale conducted on August 14, 1996, and an unconsummated drug sale arranged on October 30, 1996?

We conclude that the trial court's decision that these incidents were part of the same course of conduct of the defendant under U.S.S.G. § 1B1.3(a)(2) was supported by a preponderance of the evidence.

### FACTS AND PROCEDURAL BACKGROUND

In 1996, the Drug Enforcement Administration (DEA) began an investigation of suspected PCP distributor James Anthony Welch.[3] On August 14, 1996, a confidential informant arranged with Welch to purchase a quart of PCP for $1,500. Under DEA surveillance, the informant met Welch and drove with him to the 400 block of Spruce Street in Compton, California, where they met with an individual who identified himself as "Poo." Because neither Poo nor the informant had a container in which the informant could transport the

gon, sitting by designation.

2. This well-known trilogy of cases will be referred to as named without full citation: *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *General Elec. Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

3. Welch was tried with Hankey as a codefendant.

PCP, the informant and Welch went to a liquor store to purchase a juice bottle. They then returned to the 400 block of Spruce Street, where Poo and Welch poured PCP into the juice bottle and gave it to the informant.

Law enforcement later identified "Poo" as Lavern Hankey, who lived in his mother's home on the 400 block of Spruce Street-the site of the PCP transactions in question.

On October 28, 1996, the DEA initiated another PCP transaction with Welch, using a second confidential informant. The informant met Welch at his home, where the informant was introduced to Nathaniel Mixon.[4] A person whom the informant identified as Hankey then arrived in a green Ford Explorer, had a conversation with Welch, and drove away. Welch drove away shortly thereafter, followed by the informant and Mixon, who drove together. Welch led the informant and Mixon to the 400 block at Spruce Street, where Hankey was standing outside his parents' residence. After the informant gave Welch $1,400, Welch and Mixon walked over to Hankey, and returned to give the informant 32 ounces of PCP.

On October 30, 1996, the second informant contacted Welch to inquire about purchasing a gallon of PCP. Welch stated that in order to quote a price, he would have to "ask him." In a second phone conversation between the informant and Welch on the same day, a person in the background was heard to say, "give you a hell of a deal." When the informant asked for specifics, Welch asked the person, "He says like what, Poo? He say like what?" Welch then quoted the informant a price of $4,500. When the informant stated that he did not believe he could come up with the money before Friday, Welch responded by saying that the PCP would be divided up into quarts and sold by then. Welch urged the informant to "hurry up and get

the cash." This deal was never consummated, because the DEA was unwilling to provide the informant with the necessary cash.

Welch was arrested in January 1997. Defendant Hankey was arrested in May 1997, and was kept overnight at the police station. The next morning, William Jackson of the Compton Police Department obtained a *Miranda* waiver from Hankey, who subsequently admitted that he remembered "giving Nate [Mixon] a bottle" of PCP on October 28, 1996.

The government charged Hankey and Welch with distribution of PCP in violation of 21 U.S.C. § 841(a)(1) (October 28 transaction) and conspiracy to possess with intent to distribute PCP in violation of 21 U.S.C. § 846 (which listed the October 30 unconsummated transaction as an overt act). It did not charge the defendants with any violation in connection with the August 14, 1996, transaction.

At trial, the government's case-in-chief consisted of the testimony of the second confidential informant, tape recordings of the informant's conversations with Welch, an aerial video tape of the October 28, 1996 transaction, testimony of law enforcement officers who monitored the informant's contacts with the defendants and observed the October 28 transaction, Hankey's confession, and redacted portions of Welch's confession.

Hankey's defense was that he was not the "Poo" who engaged in the transactions. He called LaRoy Rogers to the stand to testify that there was a second "Poo" in Compton-a rap artist who was associated with Welch. Welch, while testifying on his own behalf,[5] corroborated Rogers' statement, claiming that the "Poo" who supplied the PCP was a rapper named Marcus Prea. Welch explained the proximity of the drug deals to Hankey's house by the fact

---

4. Mixon was originally indicted with Hankey and Welch, but he was later severed from the other two defendants.

5. Welch testified that he was entrapped by the DEA informants and was acquitted on that basis.

that the house next door was vacant and being used as a local drug hangout.

In rebuttal, the government sought to discredit the exculpatory testimony of Rogers and Welch by offering the expert testimony of Mark Anderson, Compton Police Department Officer and member of an FBI anti-gang task force. Anderson testified at a motion in limine Federal Rule of Evidence 104 hearing, outside the presence of the jury, that Rogers, Welch and Hankey were members of affiliated street gangs, and that these gangs enforce a code of silence among their members that any affiliated gang member would be subject to violent retribution if one gang member testified against another.

The court refused to permit Anderson to testify at trial regarding Rogers' gang membership for lack of foundation. However, the court allowed him to testify before the jury regarding the gang affiliation of Welch and Hankey. Further, the court permitted Anderson to express his opinion that if a member of one of the affiliated gangs in the area testified against another member, the witness would be beaten or killed. At the trial, the court gave a limiting instruction regarding this testimony, telling the jury that it could consider Anderson's opinions as they related to Welch's testimony about Hankey's misidentification, and that it "ought not be a factor in your determination as to whether the government has proved the charges in this case...."[6]

Hankey sought to explain his post-arrest confession to the jury by arguing that it was coerced. Outside the presence of the jury, the defense alleged that Hankey, after his arrest, called his girlfriend and asked her to contact a lawyer, Carl Sherman. The defense claimed that the girlfriend called Sherman who, in turn, called the Compton Police Department, only to be falsely informed that Hankey's release

was imminent and that there was no point in his going to the station house. The defense argued that this constituted a deliberate deception on the part of the police department, designed to obtain a coerced confession from Hankey, who was in fact detained overnight.

The district court allowed Hankey's girlfriend to testify to the jury that she had received a phone call from Hankey after the arrest and that, in response to this call, she had contacted Sherman. However, the court precluded the defense from calling Sherman to testify to the alleged conversation with the police department. The court ruled that although such deception could constitute government misconduct, it had no bearing on the voluntariness of Hankey's confession because Hankey was unaware of it and was therefore not a question for the jury.

The jury convicted Hankey on both charged counts, but acquitted Welch, apparently accepting Welch's argument that he was entrapped by the DEA informants. At sentencing, the district court calculated Hankey's offense level under the sentencing guidelines by considering his involvement in the August 14, 1996, and October 28, 1996, PCP transactions, as well as the unconsummated October 30, 1996, transaction.

As mentioned, on appeal Hankey challenges the admission of the gang expert testimony, the preclusion of attorney Sherman's testimony, and the consideration of the August 14 and October 30 transactions for sentencing.

## STANDARD OF REVIEW

A district court's evidentiary rulings during trial are reviewed for abuse of discretion. *See Old Chief v. United States,* 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *United States v. Ra-*

---

6. In full, the district court stated to the jury:
 This witness was allowed to give an opinion because he claims to be an expert in gangs in the Compton area, so he was allowed to give his opinion.

But in assessing his opinion you should consider it like any other witness-of the other witnesses in this case, you can accept it, reject it for whatever pertinent reasons you deem appropriate.

*mirez,* 176 F.3d 1179, 1182 (9th Cir.1999). "Evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict." *Ramirez,* 176 F.3d at 1182. *See also United States v. Workinger,* 90 F.3d 1409, 1412 (9th Cir.1996). A district court's decision to exclude or admit evidence under FRE 403 is reviewed with "considerable deference." *·United States v. Cordoba,* 194 F.3d 1053 (9th Cir.Cal. 1999). A district court's rulings on the admissibility of expert testimony are reviewed for an abuse of discretion. *See Kumho Tire,* 119 S.Ct. at 1176. Such rulings will be reversed only if "manifestly erroneous." *Joiner,* 118 S.Ct. at 517. When no objection is made, this court may review for plain error, but may reverse only if the defendant can show that the error "affected the outcome of the district court proceeding." *United States v. Tisor,* 96 F.3d 370, 376 (9th Cir.1996) (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

■■■ The legality of a guideline sentence is reviewed de novo. *See United States v. Jackson,* 176 F.3d 1175, 1176 (9th Cir.1999) (per curiam); *United States v. Neill,* 166 F.3d 943, 949 (9th Cir.1999). Factual findings made by the district court at sentencing must be supported by a preponderance of the evidence. *See United States v. Frega,* 179 F.3d 793, 811 n. 22 (9th Cir.1999). These findings are reviewed for clear error. *See id.*

### DISCUSSION

#### A. *Testimony of Police Gang Expert*

■■■ Hankey first argues that the district court abused its discretion in admitting the opinion testimony of Officer Anderson regarding the gang affiliations of the co-defendants and the consequences Welch would suffer if he were to testify against Hankey. Specifically, he contends that the district court failed to properly discharge its gatekeeping function for the admission of testimony offered under FRE 702 as set forth in *Kumho Tire* and *Daubert.* Hankey further argues that Officer

Anderson's testimony ran afoul of FRE 403.

FRE 702 provides that an expert may testify "in the form of an opinion or otherwise" if his or her "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue."

■■■ In *Daubert,* the Supreme Court, in addressing admissibility of "scientific expert evidence," held that FRE 702 imposes a "gatekeeping" obligation on the trial judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable." 509 U.S. at 589, 113 S.Ct. 2786. While holding that the trial court has substantial discretion in discharging its gatekeeping obligation, it suggested a number of factors that the court might consider: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Id.* at 592–94, 113 S.Ct. 2786.

■■■ In *Kumho Tire,* the Court clarified that the gatekeeping function is not limited to "scientific" expert testimony, but applies to all expert testimony, ruling that the district court did not abuse its discretion in excluding the testimony of a tire failure analyst on the grounds that the expert's methodology was unreliable. 119 S.Ct. at 1175–79. The Court stated that "it would prove difficult, if not impossible, for judges to administer evidentiary rules under which a gatekeeping obligation depended upon a distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge." *Id.* at 1175. "There is no clear line that divides the one from the others," the *Kumho* Court said, observing:

Disciplines such as engineering rest upon scientific knowledge. Pure scientific theory itself may depend for its development upon observation and properly engineered machinery. And

conceptual efforts to distinguish the two are unlikely to produce clear legal lines capable of application in particular cases.

*Id.* at 1174.

 Hankey invokes *Kumho Tire* to argue that the district court failed properly to assess the reliability of Officer Anderson's "non-scientific" testimony. He mistakenly implies that the court should have assessed this testimony in the same way that the district court reviewed the methodology used by the tire defect expert in *Kumho Tire.* However, far from requiring trial judges to mechanically apply the *Daubert* factors-or something like them-to both scientific and non-scientific testimony, *Kumho Tire* heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function. *See id.* at 1175–76. Indeed, not only must the trial court be given broad discretion to decide *whether* to admit expert testimony, it "must have the same kind of latitude in deciding *how* to test an expert's reliability." *Id.* at 1176 (emphasis added).

 The *Daubert* factors were not intended to be exhaustive nor to apply in every case. *Kumho Tire,* 119 S.Ct. at 1178. However, a trial court may consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of proffered expert testimony. *Skidmore v. Precision Printing and Packaging, Inc.,* 188 F.3d 606, 618 (5th Cir. 1999) ("Whether *Daubert*'s suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. It is a fact-specific inquiry." (internal citations omitted)).

 Likewise, in considering the admissibility of testimony based on some "other specialized knowledge," Rule 702 generally is construed liberally. *See, e.g., United States v. Ramsey,* 165 F.3d 980, 984 (D.C.Cir.1999) (admission of opinion testimony, given by agent of Drug Enforcement Administration regarding drug trade was not plainly erroneous; while agent was not formally qualified as expert, agent described his qualifications, including his specialized knowledge, education, skill and experience, before giving testimony).

 Thus, admissibility of expert opinion testimony generally turns on the following preliminary question of law determinations by the trial judge under FRE 104(a).

. Whether the opinion is based on scientific, technical, or other specialized knowledge;

. Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;

. Whether the expert has appropriate qualifications-i.e., some special knowledge, skill, experience, training or education on that subject matter. FRE 702; *Jones v. Lincoln Elec. Co.,* 188 F.3d 709 (7th Cir.1999); *see Wilson v. Woods,* 163 F.3d 935 (5th Cir.1999) (expert in fire reconstruction unqualified as expert in auto accident reconstruction).

. Whether the testimony is relevant and reliable. *Unisys Sav. Plan Litig.,* 173 F.3d 145, 155 (3rd Cir.1999); *Kumho Tire,* 119 S.Ct. at 1174–75.

. Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury). *See Joiner,* 118 S.Ct. at 522.

. Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. FRE 403; *United States v. Chischilly,* 30 F.3d 1144, 1156 (9th Cir.1994).

Here, the district court conducted extensive voir dire to assess the basis for and the relevance and reliability of Officer Anderson's testimony. Anderson stated that he had been with the Compton Police Department for 21 years; he had been working undercover with gang members in

the thousands since 1989; he had received formal training in gang structure and organization; and he taught classes about gangs. He stated that he had extensive personal knowledge regarding the two affiliated gangs of which Hankey, Welch and Rogers were members. Further, he testified he personally knew Hankey and Welch for 10 or 11 years each and that in the early 1990's Hankey and Welch told him they were members of these affiliated gangs during the late 1980's and early 1990's. He testified he believed that, because they continued to live in the neighborhood and associate with gang members, they were still members themselves because those who become unaffiliated leave town. Further, he based his opinion about Hankey's current gang membership on the criminal activity and observations he made in the field prior to the arrest for the current offenses. Upon further questioning by the court, Officer Anderson stated that he had personally seen Hankey and Welch together in 1996, but that he had not seen Rogers in several years. On this basis, the court refused to allow Officer Anderson to testify regarding Rogers' gang membership, but allowed testimony regarding the membership of Welch and Hankey, as well as the "code of silence" and retaliation that prevented members of affiliated gangs from testifying against one another. Anderson based his testimony as to the "code of silence" and retaliation upon his current and past communications with gang members and gang officers.

■ Given the type of expert testimony proffered by the government, it is difficult to imagine that the court could have been more diligent in assessing relevance and reliability. The *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind

of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it. *See Kumho Tire*, 119 S.Ct. at 1175 ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases.... In other cases, the relevant reliability concerns may focus upon personal knowledge or experience.") (internal citations omitted); *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir.1998) (upholding admission of expert testimony from law enforcement officer regarding jargon of narcotics trade, on basis of expert's training, experience, and personal knowledge).[7] The district court probed the extent of this knowledge and experience during the motion in limine-FRE 104 hearing, and therefore did not abuse its discretion in determining how best to conduct an assessment of the expert testimony.

Here, the witness had devoted years working with gangs, knew their "colors," signs, and activities. He heard the admissions of the specific gang members involved. He had communicated and worked undercover with thousands of other gang members. This type of street intelligence might be misunderstood as either remote (some dating back to the late 1980's) or hearsay (based upon current communications about "retaliation" and "code of silence."), but FRE 702 works well for this type of data gathered from years of experience and special knowledge.

Certainly the officer relied on "street intelligence" for his opinions about gang membership and tenets. How else can one obtain this encyclopedic knowledge of identifiable gangs? Gangs such as involved here do not have by-laws, organizational minutes, or any other normal means of

7. A number of Ninth Circuit cases have held that *Daubert* does not apply to "non-scientific" testimony at all. *See United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir.1998); *McKendall v. Crown Control Corp.*, 122 F.3d 803, 806 (9th Cir.1997); *United States v. Webb*, 115 F.3d 711, 716 (9th Cir.1997). To this extent, these cases are no longer good law after *Kumho Tire*, which eliminated the analytical distinction between "scientific" and "non-scientific" testimony. However, these cases are still good law to the extent that they permit the admission of expert testimony on the basis of the expert's "knowledge, skill, experience, training, or education," which is consistent with *Kumho Tire*.

identification-although as Anderson testified, some wear colors, give signs, bear tattoos, etc. Anderson was repeatedly asked the basis for his opinions and fully articulated the basis, demonstrating that the information upon which he relied is of the type normally obtained in his day-to-day police activity.

The information relied upon by Anderson was not remote-although some dated back 10 or 11 years. The admissions of the defendants as being gang members were within three or four years of the arrest and their continued gang associations were current.

"Remoteness," which is often an important variable in the relevance equation, is a term applied to material which is removed in time, distance, or circumstances from the proposition to which it is intended to be applied. As this time span narrows, however, the data becomes increasingly more helpful. In general, the issues of relevance and remoteness are left up to the commonsense of the trial judge.

After the motion in limine, the trial judge, pursuant to FRE 104(a), made findings that the foundation for Anderson's opinions was relevant and reliable. The background information for the "code of silence" and "retaliation" testimony was current and not subject to attack on remoteness grounds. Nor did the court abuse its discretion in making its ultimate decision to admit the evidence. The testimony was certainly helpful to the jury. Welch claimed on the stand that Hankey was not involved in drug transactions. Officer Anderson countered this claim by providing the jury with an explanation for why Welch would lie on Hankey's behalf. After describing his lengthy experience working with gangs, Officer Anderson testified before the jury as follows:

Prosecutor: What are the Treetop Pyrus?

Anderson: They are a Blood gang in Compton.

Prosecutor: Where are they located?

Anderson: It would be in the north middle section of Compton.

Prosecutor: Have you ever heard of a gang called the Fruit Town Pyrus?

Anderson: Yes.

Prosecutor: Are they affiliated with the Treetop Pyrus?

Anderson: Yes.

Prosecutor: Where are they located?

Anderson: The north central section of Compton.

Prosecutor: Do you have any evidence that Lavern Hankey is a member of the gang?

Anderson: Yes.

Prosecutor: What is that evidence?

Anderson: I have talked to him, arrested him. I have known him for approximately 10, 12 years. He's admitted to gang membership and hangs out with gang members.

Prosecutor: When you say he has admitted gang membership, what has he told you?

Anderson: He's a Treetop. Pyru. He lives in the area, hangs out with them.

Prosecutor: Do you know James Welch?

Anderson: Yes, I know James.

Prosecutor: How long have you known James Welch?

Anderson: 12, 13 years maybe.

Prosecutor: Do you have any evidence that he is a gang member?

Anderson: Yes.

Prosecutor: What gang is that?

Anderson: Fruit Town Pyru.

Prosecutor: What is your evidence?

Anderson: I've arrested him before. I've talked to him before. He is an admitted gang member.

Prosecutor: In your experience with gangs is there a code of silence?

Anderson: Yes.

Prosecutor: Can you describe that for us?

Anderson: It's simply not testifying against your gang members, Blood members primarily. They do testify against a rival gang, which is considered

the Crips, and if you do testify, there could be some harsh results.

Prosecutor: Now, you said earlier that Lavern Hankey is a member of the Treetop Pyrus?

Anderson: Correct.

Prosecutor: And James Welch is the Fruit Town Pyrus?

Anderson: Correct.

Prosecutor: And that they are affiliated?

Anderson: Yes.

Prosecutor: If a member of the Fruit Town Pyrus testified against a member of the Treetop Pyrus, do you have an opinion as to what would happen?

Counsel for co-defendant Welch: Objection. Calls for improper opinion.[8]

The court: Overruled.

Anderson: Yes.

Prosecutor: What is that?

Anderson: Either be beaten or killed.

Obviously, this testimony was offered to impeach the credibility of co-defendant Welch for bias or coercion and clearly is relevant as a form of bias or coercion.

■ Under FRE 401, proffered evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence helpful in evaluating the credibility of a witness is of consequence to the determination of the action. Evidence is relevant to a matter of consequence to the determination of the case if it has a mere tendency to impeach a witness' credibility by a showing of bias or coercion.

The logical syllogism might be set forth as follows:

Witness elects to testify for friend/gang member.

If witness says anything adverse to friend-gang member code or tenet-would require retaliation.

Ergo: Witness will not only be biased in favor of friend, but coerced to not say anything adverse to friend-e.g., will lie to protect friend and himself.

Bias, of course, covers all varieties of favor. *See* 3A Wigmore, *Evidence,* § 945 at 782 (Chadbourn rev.1970). In *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), the Supreme Court noted:

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or *fear of a party,* or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*See also United States v. Greenwood,* 796 F.2d 49, 54 (4th Cir.1986) ("Bias, defined as 'emotional partiality,' *United States v. Robinson,* 530 F.2d 1076, 1079 (D.C.Cir. 1976), is not a collateral issue"); *United States v. Harvey,* 547 F.2d 720, 722 (2d Cir.1976). The point of a bias inquiry is to expose to the jury the witness' special motive to lie, *Harvey,* 547 F.2d at 722, by revealing facts such as interest in the outcome of the trial, *see United States v. Gambler,* 662 F.2d 834, 837 (D.C.Cir.1981), or personal animosity or favoritism toward the defendant. *See Abel,* 469 U.S. at 50, 105 S.Ct. 465; *Gambler,* 662 F.2d at 837.

■ Further, the Supreme Court in *Abel* approved the admission of evidence of gang membership where it had probative value: "membership in the prison gang

---

8. *See United States v. Koon,* 34 F.3d 1416, 1442 (9th Cir.1994) (reviewing for plain error where defendants failed to join co-defendant's motion), *aff'd in part, rev'd in part on other grounds,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). We note that Hankey's counsel failed to join in this objection. However, we need not address the preservation of error issue, because we find no error of any kind.

was sufficiently probative of ... possible bias towards respondent to warrant its admission into evidence." 469 U.S. at 49, 105 S.Ct. 465. Applying that rule in *Abel*, the court held clearly admissible the membership of a party and a witness in the same secret prison organization which had a creed requiring members to lie for each other, inferring a form of bias by coercion.[9]

Defendant Hankey claims on appeal that the trial court abused its discretion when it permitted gang related evidence "over the Rule 403 objection," claiming the evidence was highly prejudicial.[10]

 FRE 403 articulates the judicial power to exclude relevant evidence because of prejudicial dangers or considerations. Relevant evidence may be excluded under FRE 403 only if its probative value is substantially outweighed by one or more of the articulated dangers or considerations. This requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons "substantially outweigh" the probative value. FRE 403 favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial.

 As aptly stated by the court in *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983), in admitting evidence of Aryan Brotherhood gang activities:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to

be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

As the Advisory Committee Notes to FRE 403 explain, unfair prejudice means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

As mentioned above, the expert testimony was probative in that it revealed a potential motive for Welch to lie on Hankey's behalf. Hankey nonetheless argues that any probative value was substantially outweighed by the risk that the jury would convict him in an emotional reaction to the revelation that he was a member of a street gang.

Here, the "gang" evidence was not proffered to prove a substantive element of a crime-as in *United States v. Garcia*, 151 F.3d 1243, 1245 (9th Cir.1998) ("gang" general agreement to support one another in gang fights not substantial proof of conspiracy to assault), but was clearly relevant and not unduly prejudicial under *United States v. Abel, supra*, which dealt directly with the issue at hand-impeachment for bias or coercion, not as proof of intent, or of the facilitation, advice, aid, promotion, encouragement or instigation needed to establish aiding and abetting. *Mitchell v. Prunty*, 107 F.3d 1337, 1342 (9th Cir.), *cert. denied*, 522 U.S. 913, 118 S.Ct. 295, 139 L.Ed.2d 227 (1997), *overruled on other grounds by Santamaria v.*

---

9. As defined by Michael Graham in *Handbook of Federal Evidence*, (4th ed.1996), Section 607.7, coercion is "intended to include any form of mental, emotional, or physical duress or compulsion that overcomes a witness' duty to tell the truth."

10. Actually, only counsel for Welch raised the objection under FRE 403 at the Rule 104 motion in limine hearing, stating:

> Your Honor, my objection is pursuant to Rule 403 that this evidence should be ex-

cluded on the grounds that it is too prejudicial and far outweighs any probative value. We think that the government by bringing in this suggestion would suggest that the defendant was involved in criminal activities and that members were accustomed to using violence to further their interest. I think this would be highly prejudicial and unduly influence the jury and confuse the issues.

Once again, we need not address the preservation of error issue as to Hankey, because we find no error of any kind.

*Horsley,* 133 F.3d 1242, 1248 (9th Cir. 1998).

The Supreme Court in *United States v. Abel* also addressed the unfair prejudice issue. In *Abel,* the government sought to prove the bias of a defense witness through cross-examination and extrinsic evidence showing that the defendant and the defense witness were members of the same prison gang, and that the tenets of the gang required members to "lie, cheat, steal, [and] kill" to protect each other. 469 U.S. at 48, 105 S.Ct. 465. The Court held that a witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias. *Id.* at 52, 105 S.Ct. 465. In *Abel,* the Court also rejected the argument that the district court should cut off the description of the type of gang because evidence of the gang's tenets was unfairly prejudicial. The Court observed:

> This argument ignores the fact that the type of organization in which a witness and a party share membership may be relevant to show bias.... The attributes of the Aryan Brotherhood-a secret prison sect sworn to perjury and self-protection-bore directly not only on the fact of bias but also on the source and strength of Mills' bias.

*Abel,* 469 U.S. at 54, 105 S.Ct. 465. The Court noted that the defendant had not been unfairly prejudiced where the district court had prevented the use of the term "Aryan Brotherhood" and had given a cautionary instruction. *See id.* at 54–55, 105 S.Ct. 465. The Court thus held that the district court had not abused its discretion in permitting the testimony about gang membership.

Other courts have upheld fear of "gang" retaliation as appropriate impeachment evidence. *See United States v. Keys,* 899 F.2d 983, 987 (10th Cir.1990); *United States v. Greschner,* 802 F.2d 373, 382–83 (10th Cir.1987). Although this kind of testimony probably creates a risk that the jury will "equate gang membership with the charged crimes," *see United States v. Robinson,* 978 F.2d 1554, 1570 (10th Cir. 1992) (Seth, J., dissenting), such a risk was limited in this case. First, the jury was not oblivious to the lifestyle of the defendants-it had already heard testimony that Welch had been shot because the police allegedly put word out on the street that he was an informant. Further, the judge gave the jury an adamant limiting instruction in which he cautioned that Officer Anderson's testimony should only be considered for the purpose of assessing the exculpatory testimony of Welch.[11] Finally, although the jury convicted Hankey, it acquitted co-defendant Welch on the basis of his entrapment defense. This is strong evidence that the jury did not equate gang membership with the charged crimes.

In sum, the district court did not err in admitting the "gang" related evidence for impeachment purposes.

### B. *Testimony Regarding Hankey's Confession*

█ In an effort to cast doubt upon the voluntariness of Hankey's confession, the defense proffered attorney Carl Sherman, who would have testified that the Compton Police Department misled him into believing that Hankey's release was imminent and that he did not need to make a trip to the station house. The district court found that the Supreme Court case of *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), compelled the exclusion of this testimony.

---

11. This court has recognized the effectiveness of a properly-worded limiting instruction on numerous occasions. *See, e.g., United States v. Tsinnijinnie,* 91 F.3d 1285, 1289 (9th Cir. 1996); *United States v. Baker,* 10 F.3d 1374, 1413–14 (9th Cir.1993); *United States v. Rubio–Villareal,* 927 F.2d 1495, 1503 (9th Cir. 1991). *Compare United States v. Hill,* 953 F.2d 452, 457–58 (9th Cir.1991) (holding that, in a cocaine distribution trial, improper admission of prior casual drug use by defendant was not cured by limiting instruction, where limiting instruction actually suggested that jury should consider evidence for improper purpose).

In *Moran*, after the suspect was arrested, his sister phoned the public defender's office to obtain legal assistance for him. An attorney from the office phoned the police station, and was told that the police would not be questioning the suspect that evening. *See id.* at 416, 106 S.Ct. 1135. Less than an hour later, however, the suspect gave a "Mirandized" confession in response to police questioning. The suspect was not aware of either his sister's efforts to retain counsel for him, or the conversation between the attorney and the police department. *Id.*

The Court ruled that the police did not violate the suspect's *Miranda* rights because the alleged misconduct had no bearing on the voluntariness of his confession: "Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Moran,* 475 U.S. at 422, 106 S.Ct. 1135. The Court emphasized that "the record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements." *Id.* at 421, 106 S.Ct. 1135. Although the Court found the conduct of the police highly inappropriate, it held that this conduct was not of constitutional dimension and therefore must be left to the states to regulate. *See id.* at 424–25, 106 S.Ct. 1135.

The issue presented in this case is slightly different, although *Moran* still appears to govern the outcome. Here, Hankey did not seek to exclude his confession on *Miranda* grounds, but sought to present evidence to the jury that would cast doubt on its voluntariness.[12] Therefore, unlike *Moran*, where the issue was wheth-er the police misconduct was of constitutional proportion, the inquiry in this case is whether the alleged misconduct is relevant, in an evidentiary sense, to the voluntariness of Hankey's confession.

The defense argues as follows:

Hankey is arrested, and calls his girlfriend and asks her to get him a lawyer. Hours go by. No lawyer shows up. No one comes to question him. He spends the night in jail. The police department tells his lawyer never mind, don't come down, we are releasing him. He isn't released, and he doesn't know why the lawyer has not come to see him. The next day, he is questioned by he police, who will let him go if he says he will cooperate. These are facts the jury should have been allowed to hear and consider in connection with their evaluation of defendant Hankey's inculpatory statement.

The weakness in Hankey's argument is that the defense *was* able to present the bulk of the above-quoted argument to the jury, through both Hankey's sister's testimony and closing argument. The jury learned that Hankey asked his sister to call a lawyer, waited in jail for almost 24 hours without hearing from a lawyer, and then signed a *Miranda* waiver and confessed. Defense counsel argued that this cast doubt upon the validity of Hankey's confession. Thus, the only information kept from the jury was the reason for the attorney's absence-the alleged police misconduct. As was the case in *Moran*, the reason for the attorney's absence has no bearing on the voluntariness of Hankey's confession, absent evidence that Hankey told the police he wished to exercise his right to an attorney and was denied that right.[13] The record reveals no such evi-

---

**12.** 18 U.S.C. § 3501(a) provides that even when a judge does not exclude a statement under *Miranda,* he "shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all of the circumstances." *See also United States v. Hoac,* 990 F.2d 1099, 1107 (9th Cir.1993) ("where a defendant rais-es a genuine issue at trial concerning the voluntariness of a statement, the trial court is obligated by statute to instruct the jury concerning the weight to be accorded that statement.") Here, the district court properly instructed the jury in this respect.

**13.** In other contexts, the Ninth Circuit has confirmed the general principle set forth in

dence here. Accordingly, the district court did not err by keeping this information from the jury.

## C. *Consideration of August 14 and October 30 Transactions at Sentencing*

Finally, Hankey argues that the district court improperly considered the quantities of PCP involved in the August 14, 1996, and October 30, 1996, transactions when calculating his sentence.

U.S.S.G. § 1B1.3(a)(2) notes that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction."

 There was clear evidence that the August 14 PCP sale involved the same participants, the same amount, and the same location as the October 28 transaction. Further, the October 30, 1996, proposed transaction also involved the same participants, and the negotiations that were recorded on tape indicated that Welch and Hankey conspired to sell a gallon of PCP to the same DEA informant who had made a purchase from them two days earlier. In light of the foregoing, the district court did not clearly err in finding by a preponderance of the evidence that these transactions were part of the same course of conduct.

## CONCLUSION

For the foregoing reasons, the district court did not abuse its discretion in admitting the testimony of a police gang expert to impeach co-defendant Welch's testimony that Hankey was not involved in the alleged drug transactions, particularly in light of the extensive voir dire and the

submission of a limiting instruction to the jury. Nor did it abuse its discretion in precluding the testimony of attorney Sherman regarding his conversation with the Compton Police Department, because there was no evidence that this conversation was relevant to the voluntariness of Hankey's confession. Finally, the court's finding that the August 14 and October 20 transactions were "relevant conduct" within the meaning of U.S.S.G. § 1B1.3(a)(2) was supported by a preponderance of the evidence.

AFFIRMED.

---

*Moran* that government misconduct is not a jury question unless relevant to the defendant's guilt or innocence. *See, e.g., United States v. Ramirez,* 710 F.2d 535, 539–40 (9th Cir.1983) (question whether government agents committed misconduct in violation of defendant's due process rights is issue of law properly determined by court rather than jury); *United States v. Sotelo–Murillo,* 887 F.2d 176 (9th Cir.1989) (same); *United States v. Lue,* 498 F.2d 531 (9th Cir.1974) (same).