**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Christina Maria MENDOZA–PAZ,
Defendant–Appellant.**

**No. 00–50029.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 2000.

Filed April 10, 2002.

Steven F. Hubachek, Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney; Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section Criminal Division; Renee M. Bunker, Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Before B. FLETCHER, THOMAS, and WARDLAW, Circuit Judges.

## OPINION

WARDLAW, Circuit Judge.

Christina Mendoza–Paz appeals her jury conviction for importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). She contends that Sections 841 and 960 are unconstitutional on their face and as applied. She also argues that the district court erred in (1) finding that the government complied with Federal Rule of Criminal Procedure 16(a)(1)(E); (2) failing to discharge its gatekeeping duty in the admission of expert testimony; and (3) permitting a lay witness to comment on Mendoza–Paz's credibility. We hold that 21 U.S.C. §§ 841 and 960 are facially constitutional, and Mendoza–Paz's as-applied challenges to the statutes are without merit. We further conclude that the district court did not commit error with respect to any of the other challenged rulings. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background

On May 21, 1999, Mendoza–Paz attempted to enter the United States at the San Ysidro, California Port of Entry. A United States Customs Inspector was working in the primary inspection area of the port of entry when Mendoza–Paz arrived. His suspicions were aroused by a strong odor of perfume throughout Mendoza–Paz's vehicle, the number of keys on her key ring, the vehicle registration in her name as of the day before, and the depth discrepancy in the trunk, indicating a compartment. The Inspector therefore placed Mendoza–Paz in handcuffs and escorted her to the security office.

A second United States Customs Inspector was sent to drive the vehicle to the secondary inspection lot. After noticing the odor and the lack of personal belong-

ings in the car, he summoned a narcotics dog, which alerted to the back seat. The Inspector there found a compartment containing packages that tested positive for marijuana, as well as packages under the front bumper. Mendoza–Paz was placed under arrest and advised of her *Miranda* rights, which she waived.

On June 2, 1999, Mendoza–Paz was indicted for knowingly and intentionally importing into the United States approximately 34.32 kilograms of marijuana in violation of 21 U.S.C. §§ 952 and 960, and for knowingly and intentionally possessing with intent to distribute approximately 34.32 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1).

In advance of trial, Mendoza–Paz requested "written summaries of all expert testimony that the government intends to present ... during its case in chief, written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications." The United States filed an *in limine* motion to admit expert testimony regarding narcotics trafficking and the value of the seized marijuana. The government's motion also noted that it had previously advised defense counsel that it intended to call a United States Customs Special Agent as its narcotics expert. It provided a two-page letter designating the expert and summarizing the scope and bases for his testimony. In response, Mendoza–Paz filed an *in limine* motion to preclude expert testimony regarding drug courier profiles and the value of the seized marijuana as prejudicial. In the alternative, the motion sought a hearing to determine the reliability and relevance of "experience-based" expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

The district court held a *Daubert* hearing on the Agent's expert testimony, ruling that the government must produce any reports upon which the expert relied in rendering a valuation opinion. The court also held that it would permit expert testimony regarding the retail value of the seized marijuana but would limit the testimony on the nature and structure of drug smuggling organizations. Shortly thereafter, the government provided Mendoza–Paz with a Street Drug Price List upon which the valuation expert relied in part.

Before opening statements, on the first day of trial, defense counsel noted that, although the government had provided the opinion of another expert—the chemist—and a copy of his report, the government had not provided the bases for his opinion, i.e., the tests that he had run, as required under Federal Rule of Criminal Procedure 16(a)(1)(E). The district court required the government to disclose the tests the chemist conducted, which the government did during the recess before opening statements. The chemist testified at trial that same day.

Also, before opening statements, defense counsel noted that they had not yet received any written materials relied upon by the valuation expert. The government responded that the expert relied upon his general experience and background, rather than anything tangible. The court ruled immediately thereafter that under Rule 16, Mendoza–Paz was entitled only to tangible materials rather than background materials. The district court also ruled that it would hold the *Daubert* hearing on the expert in the presence of the jury for efficiency purposes, and defense counsel objected.

When the trial commenced, before the government called the valuation expert, defense counsel renewed their objections to the court's denial of a *Daubert* hearing

outside the presence of the jury and to the government's failure to adequately provide the bases for the expert opinion. The court reviewed the written summary provided to the defense, the expert's resume, and the drug value report produced pursuant to the court's pre-trial order and found that they provided sufficient bases for the opinion. It also found that its gatekeeper functions did not require a hearing outside the presence of the jury.

During cross examination, defense counsel conducted a voir dire of the valuation expert, questioning him regarding the reliability and bases for his opinions. At side bar, the defense requested access to the database and confidential informants that the expert testified had informed his opinion. The court denied the request, finding that the basis of the expert's opinions was his general background and life experience. The court asked the government to inquire whether there were any specific publications that the expert could produce and stated that defense counsel could recall the expert to question him about whatever materials were produced. The court then qualified the expert, and his testimony was presented.

In defense, Mendoza–Paz testified that while visiting a friend in Mexico at La Mesa Penitentiary, she agreed to price a television for an inmate at a swap meet the next day. She stated that she went to the swap meet, and although it was closed, she met two men on the street, one of whom was called Pablo, from whom she agreed to buy the vehicle in which she was arrested. Although she did not have with her the money to purchase the car, she followed the men to the Mexican Department of Motor Vehicles, and they transferred the registration to her name. Mendoza–Paz claimed that the men met her the next morning in a parking lot, and they exchanged the money for the car. Leaving her old car in the parking lot, she then drove her new car to San Ysidro to enter the United States so she could buy big-size Kit Kat candy bars at Target and possibly some watch batteries.

In rebuttal, the government called a United States Customs Special Agent to impeach Mendoza–Paz's testimony. The Agent explained that, at the post-arrest interview, Mendoza–Paz stated that she bought the car from one unknown individual and never mentioned the name Pablo. Nor did she mention watch batteries. The Agent further testified, without objection, that she "didn't believe her story."

At the close of trial, the court instructed the jury that the government "is not required to prove that the amount or quantity of marijuana was as charged in the indictment. It need only prove beyond a reasonable doubt there was a measurable or detectable amount of marijuana." The jury returned a verdict of guilty on both counts after less than three hours. After a sentencing hearing on January 3, 2000, the district court sentenced Mendoza–Paz to twenty-one months. The judgment and commitment was filed on January 3, 2000, and Mendoza–Paz filed a Notice of Appeal on the same day.

## II. Discussion

### A. Constitutionality of 21 U.S.C. §§ 841 and 960

■ Mendoza–Paz contends that 21 U.S.C. § 841(a)(1) and § 960 are facially unconstitutional because they require the determination of drug quantity, and therefore the establishment of the applicable maximum sentence, to be made by the judge rather than a jury. Thus, Mendoza–Paz reasons, this scheme violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

Mendoza–Paz's argument that 21 U.S.C. § 841(a)(1) is unconstitutional is foreclosed

by our recent decision in *United States v. Buckland*, 277 F.3d 1173 (9th Cir.2002) (en banc), which held that the provisions of Section 841 are constitutional. Applying the rationale of *Buckland*, we must also reject Mendoza–Paz's facial constitutional challenge to 21 U.S.C. § 960. Neither statute requires that the issue of drug quantity be committed to the sentencing judge rather than the jury. Because the statutes are " 'silent on the question of what procedures courts are to use in implementing its provisions ..., the rule in *Apprendi* in no way conflicts with the explicit terms of the statute.' " *Buckland*, 277 F.3d at 1180 (quoting *United States v. Cernobyl*, 255 F.3d 1215, 1219 (10th Cir. 2001)).

As we noted in *Buckland*, the drug statutes are most striking for what they do not say. *Buckland*, 277 F.3d at 1179. Like Section 841, and unlike the statute examined in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Section 960 "does not specify who shall determine drug quantity or identify the appropriate burden of proof for these determinations." *Id.* In *Buckland*, we made clear that *Apprendi* does not hold that Congress can no longer have separate statutory provisions governing a substantive offense and sentencing factors. *Id.* at 1180–82. Congress intended to impose increased penalties for increasing quantities of increasingly serious drugs. Therefore, our "aim remains to give effect to Congress's intent. That intent is apparent: to ramp up the punishment for controlled substance offenders based on the type and amount of illegal substance involved in the crime." *Id.* at 1182.

As Mendoza–Paz has consistently argued, Sections 841 and 960 are "structurally identical." Therefore, the rationale of *Buckland* governs this claim. *See United States v. Varela–Rivera*, 279 F.3d 1174, 1175 n. 1 (9th Cir.2002) (holding that challenge to constitutionality of Section 952 is precluded based on the *Buckland* decision). Finding *Buckland*'s reasoning equally applicable to Section 960, we hold that the statute is constitutional.

Mendoza–Paz next argues that Sections 841 and 960 as applied are unconstitutional because she was sentenced pursuant to a drug type and drug quantity that were not submitted to a jury or proved beyond a reasonable doubt. This claim, too, is without merit.

■ First, the record demonstrates that drug type was submitted to the jury. In the instructions to the jury, the trial judge stated:

> The Government is not required to prove that the amount or quantity of marijuana was as charged in the indictment. It need only prove beyond a reasonable doubt there was a measurable or detectable amount of marijuana for Count 1, and for Count 2, that this marijuana was possessed with intent to distribute it.

By this instruction, the judge informed the jury that it had to find that the substance in question was marijuana.

■ The record also demonstrates, however, that drug quantity was not submitted to the jury. Nevertheless, Mendoza–Paz was convicted, and subsequently sentenced, based on the court's finding by a preponderance of the evidence that she had imported and possessed approximately 34.32 kilograms of marijuana. The court sentenced Mendoza–Paz to twenty-one months custody, far below the sixty-month statutory maximum penalty for the lowest amounts of the least serious controlled substances. Since the drug quantity in this case did not increase Mendoza–Paz's penalty beyond the prescribed statutory maximum, neither *Apprendi* nor *Buckland* required that this fact be determined by

the jury. The district court did not err in making this determination itself and applying a preponderance of the evidence standard. *United States v. Gill,* 280 F.3d 923, 931 (9th Cir.2002) (where jury has not decided quantity of drugs involved and sentencing court must determine drug quantity, "so long as the sentence imposed does not exceed the statutory maximum, the quantum of proof the judge should apply is a preponderance of the evidence."). Because Mendoza–Paz's twenty-onè month sentence stands under Section 960, we need not address her as-applied challenge to Section 841.

## B. Discovery

### 1. Federal Rule of Criminal Procedure 16

■ We review de novo the district court's rulings on the scope of its authority to order discovery under Federal Rule of Criminal Procedure 16. *United States v. Mikaelian,* 168 F.3d 380, 389 (9th Cir. 1999). "[A] violation of Rule 16 does not itself require reversal, or even exclusion of the affected testimony." *United States v. Figueroa–Lopez,* 125 F.3d 1241, 1247 (9th Cir.1997). " 'The prejudice that must be shown to justify reversal for a discovery violation is a likelihood that the verdict would have been different had the government complied with the discovery rules, not had the evidence been suppressed.' " *United States v. Baker,* 10 F.3d 1374, 1398 n. 8 (9th Cir.1993).

The district court did not err in ruling that the government sufficiently complied with Rule 16(a)(1)(E). Mendoza–Paz contends that the testimony of both the valuation expert and the chemist should have been excluded for failure to timely provide notice of intent to present their testimony and the bases of that testimony. Contrary to Mendoza–Paz's argument, the government's disclosures in fact provided Mendoza–Paz "with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R.Crim.P. 16, 1993 amend. advisory committee's note.

The government notified Mendoza–Paz of its intent to introduce a narcotics valuation expert on July 19, 1999. It notified Mendoza–Paz that it had selected its expert on September 16, 1999, twelve days before trial, and summarized his anticipated testimony:

> The bases for [the expert's] opinions include, but are not limited to, his continuous contact with state and federal intelligence programs, contact with narcotics agents at the state and federal level, contact with undercover agents who have worked closely with drug-traffickers, contact with cooperating defendants who have been or have worked with drug smugglers, and contacts with confidential informants who deal on an ongoing basis with narcotics-smuggling organizations and their tactics.

On September 20, 1999, the government forwarded the expert's resume and a report on which he had relied in part in forming his opinion regarding valuation of the seized marijuana.

■ Mendoza–Paz also has not demonstrated the requisite degree of prejudice. She has not demonstrated a likelihood that the verdict would have been different if she had been provided with additional documents underlying the expert's valuation of the marijuana. *See Figueroa–Lopez,* 125 F.3d at 1247. Although Mendoza–Paz asserts that she was prejudiced by defense counsel's inability to adequately cross-examine the expert, she does not explain how she was prejudiced. Nor does she argue that the expert's testimony was in any way erroneous or based on unreliable sources. Mendoza–Paz does not contend that the valuation of the marijuana was actually lower than the $60,400 estimated by the

expert, or even that such a conclusion is questionable.

■ For similar reasons, it was not prejudicial error for the district court to admit the testimony of the chemist. Mendoza–Paz contends that the government failed to timely produce the basis for the chemist's opinion. Although the government did not provide summaries of the chemist's anticipated testimony and qualifications until four days before trial, and did not provide the names of the tests conducted on the marijuana until the first day of trial, Mendoza–Paz has not demonstrated a likelihood that the verdict would have been different if that information had been provided earlier. *See Figueroa–Lopez*, 125 F.3d at 1247. The three tests conducted were standard, and all positively identified the material as marijuana.

### 2. Gatekeeping Duty Under Daubert v. Merrell Dow Pharmaceuticals

■ Mendoza–Paz argues that the district court failed to discharge its gatekeeping duty regarding the admission of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert*, the Supreme Court held that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. 2786. The Court also discussed certain more specific factors, such as testing, peer review, error rates, and acceptability in the relevant scientific community, some or all of which might prove helpful in determining the reliability of a particular scientific theory or technique. *Id.* at 593–94, 113 S.Ct. 2786. The Supreme Court has further stated that "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other

specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ Mendoza–Paz contends that the valuation expert's testimony should have been excluded because it was not subject to empirical testing, could not be reviewed for error rates, and the estimates it contained had not been accepted in any expert community. However, "the test of reliability is 'flexible,' and .... the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 141–42, 119 S.Ct. 1167; *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir.2000) (holding that "far from requiring trial judges to mechanically apply the *Daubert* factors—or something like them—to both scientific and non-scientific testimony, *Kumho Tire* heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function"). We have previously rejected an argument similar to that made here. In *Hankey*, we held, with respect to expert testimony on gang membership, that the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hankey*, 203 F.3d at 1169.

The valuation expert testified that he had investigated illegal narcotics trafficking for eleven years and had participated in seminars on methods and techniques of drug trafficking organizations. He further testified that he obtained experience in the value of illegal narcotics from intelligence databases, in-house intelligence agents, confidential informants, defendants he had debriefed, and cooperating defendants. From this testimony, the district court

could reasonably conclude that the expert was qualified to give testimony regarding the value of the seized marijuana. Therefore, the district court did not abuse its discretion in admitting the expert's testimony. *See id.* at 1169.

 Mendoza–Paz's argument that the district court erred in failing to conduct the *Daubert* hearing outside the presence of the jury is foreclosed by our decision in *United States v. Alatorre,* 222 F.3d 1098 (9th Cir.2000). As we there stated:

> Nowhere in *Daubert, Joiner,* or *Kumho Tire* does the Supreme Court mandate the form that the inquiry into relevance and reliability must take, nor have we previously spoken to this issue. Although the Court stated that the inquiry is a 'preliminary' one, to be made 'at the outset,' this does not mean that it must be made in a separate, pretrial hearing, outside the presence of the jury."

*Alatorre,* 222 F.3d at 1102 (footnote and internal citation omitted).

## C. Lay Opinion Testimony

 We review the admission of lay opinion testimony for an abuse of discretion. *United States v. Pino–Noriega,* 189 F.3d 1089, 1097 (9th Cir.1999). When there is no objection to such testimony, our review is for plain error. *Id.* Under plain error review, "relief is not warranted unless there has been (1) error, (2) that is plain, and (3) affects substantial rights." *Jones v. United States,* 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *see also United States v. Whitehead,* 200 F.3d 634, 638 (9th Cir.2000). If these conditions are met, we may exercise our discretion to notice the forfeited error only if the error " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Jones,* 527 U.S. at 389, 119 S.Ct. 2090 (citations omitted).

 Because Mendoza–Paz did not object, we review the admission of the Agent's testimony that she did not believe Mendoza–Paz's story at the post-arrest interview for plain error. Fed.R.Crim.P. 52(b). Federal Rule of Evidence 701 requires that if a witness is not testifying as an expert, "the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

The government acknowledges that the Agent's testimony was the result of its improperly phrased question, which was intended as an appropriate attempt to elicit demeanor evidence. Even if we assume that the Agent's testimony was improper lay opinion, however, the error did not "affect substantial rights," and thus did not seriously affect "the fairness, integrity, or public reputation of judicial proceedings." *Whitehead,* 200 F.3d at 638 (citations omitted). First, after the Agent's disbelief was elicited, it was defense counsel that pursued the issue in cross-examination. Defense counsel questioned the Agent about why she did not conduct an investigation in Mexico, asking her, "[s]o based on that belief, you decided you didn't have to conduct any further investigation?"

Second, given Mendoza–Paz's improbable story that she spontaneously decided to buy a car from two strangers whose names she never learned and then decided to drive it to the United States to buy candy bars, it is more likely than not that the jury would have convicted her in the absence of the Agent's testimony. Where the "jury would surely have doubted the truth of [the defendant's] statements regardless of whether [the agent] testified that those statements 'did not make sense[,]' . . . it is highly unlikely that the outcome of the district court proceedings

would have been different absent [the agent's] comments." *Pino–Noriega,* 189 F.3d at 1097. Because the admission of the Agent's testimony did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings," *Jones,* 527 U.S. at 389, 119 S.Ct. 2090 (quotation marks omitted), we find that the admission of these comments was not plain error.

### III. Conclusion

We reject Mendoza–Paz's arguments that the district court erred in (1) finding that the government complied with Federal Rule of Criminal Procedure 16(a)(1)(E); (2) failing to discharge its gatekeeping duty in the admission of expert testimony; and (3) permitting a lay witness to comment on Mendoza–Paz's credibility. We further hold that 21 U.S.C. §§ 841 and 960 are facially constitutional, and Mendoza–Paz's as-applied challenges to the statutes are without merit. We therefore

AFFIRM.